**[J-73-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 37 EAP 2015 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 5/12/15 at No. 532 |
| v. | : | EDA 2011 reversing the order entered |
| | : | on 8/6/08 in the Court of Common |
| TERRANCE WASHINGTON, | : | Pleas, Philadelphia County, Criminal |
| | : | Division, at Nos. CP-51-0711021, |
| Appellant | : | 0711141, and 1009712-1996 and CP- |
| | : | 51-CR-1107481, 1107621, 1107651 |
| | : | and 1107671-1997 |
| | : | |
| | : | SUBMITTED: April 7, 2016 |

**_OPINION_**

**CHIEF JUSTICE SAYLOR**                                    **DECIDED:  July 19, 2016**

The controlling question presented is whether the Supreme Court of the United States' decision in _Alleyne v. United States_, ___ U.S. ___, 133 S. Ct. 2151 (2013), applies retroactively to attacks upon mandatory minimum sentences advanced on collateral review.

This discretionary appeal has a prolix factual and procedural history, commencing with numerous armed robberies perpetrated by Appellant in 1996. Appellant was charged with almost two dozen robbery offenses as well as related crimes, and he was convicted upon a jury trial relative to many of the charges and after pleas concerning others. In 1998, the common pleas court imposed an aggregate sentence of 35 to 70 years' imprisonment, with the aggregate minimum encompassing

multiple mandatory minimum sentences under Section 9712 of the Sentencing Code. *See* 42 Pa.C.S. §9712(a).

The provisions of Section 9712 require imposition of a five-year mandatory minimum sentence for crimes of violence involving the visible possession of a firearm placing a victim in fear of death or serious bodily injury. *See id.* Of particular relevance here, the statute specifies that its prescriptions "shall not be an element of the crime," and that the applicability "shall be determined at sentencing," with factual matters being resolved by the sentencing court "by a preponderance of the evidence." *Id.* §9712(b).

Appellant did not initially pursue a direct appeal. He later obtained appellate review *nunc pro tunc*, however. That appeal was unsuccessful, and the judgments of sentence became final in 2006.

Later that year, Appellant filed a timely petition under the Post Conviction Relief Act, 42 Pa.C.S. §§9541 – 9546 (the "PCRA"). Notably, Appellant did not raise a Sixth Amendment challenge to the above directives of Section 9712(b). The PCRA court dismissed the petition, and several procedural irregularities ensued, which were addressed in a 2011 order of the Superior Court according Appellant the right to appeal from the dismissal of the post-conviction petition.

In 2013, the Supreme Court of the United States issued its *Alleyne* decision, overruling its prior precedent. *Alleyne* held that any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury, rather than a judge, and found beyond a reasonable doubt. *See Alleyne*, ___ U.S. at ___, 133 S. Ct. at 2163. The effect was to invalidate a range of Pennsylvania sentencing statutes predicating mandatory minimum penalties upon non-elemental facts and requiring such facts to be determined by a preponderance of the evidence at sentencing. *See, e.g., Commonwealth v. Hopkins*, ___ Pa. ___, ___, 117 A.3d 247,

262 (2015) (holding that Section 6317 of the Crimes Code, 18 Pa.C.S. §6317 -- which predicates a mandatory minimum sentence upon a fact to be determined by a preponderance at sentencing -- was constitutionally infirm, under *Alleyne*).

The Superior Court disposed of Appellant's appeal from the denial of post-conviction relief via memorandum opinion in 2015, affirming in relevant part. Although Appellant had not raised a pertinent Sixth Amendment claim, the majority acted of its own accord to discuss the *Alleyne* decision. At the outset, the majority highlighted its previous holding that Section 9712 was "unconstitutional in its entirety." *Commonwealth v. Washington*, No. 532 EDA 2011, *slip op.* at 14 (Pa. Super. May 12, 2015) (citing *Commonwealth v. Valentine*, 101 A.3d 801, 811-12 (Pa. Super. 2013)). Nevertheless, in light of Appellant's failure to raise and preserve the *Alleyne* issue before the PCRA court, the majority deemed that determination to be inapplicable. *See id.* Notably, the majority couched its reasoning in terms of retroactivity jurisprudence. *See id.* (quoting, indirectly, *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983) ("[W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.")).

In a responsive memorandum concurring in relevant regards, Judge Bowes characterized the majority's treatment of *Alleyne* as "cursory." *Id.* at 4 (Bowes, J., concurring and dissenting). Judge Bowes initially noted that the Superior Court had held that *Alleyne* violations undermine the legality of sentences, *see, e.g.*, *Valentine*, 101 A.3d at 809 (citing *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*)), such that the conventional rules of issue preservation did not apply, *see Commonwealth v. Fahy*, 558 Pa. 313, 331, 737 A.2d 214, 223 (1999) (explaining that,

"legality of sentence is always subject to review within the PCRA," albeit subject to the enactment's self-contained time limits). Unlike the majority, however, the responsive opinion distinguished issue preservation in the context of direct appellate review from retroactivity analysis on post-conviction review.

In terms of retroactivity impacting the post-conviction stage, Judge Bowes discussed the seminal framework delineated in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989) (plurality), as follows. Under the *Teague* line of cases, a new rule of constitutional law is generally retrospectively applicable only to cases pending on direct appellate review. *See, e.g., Montgomery v. Louisiana*, ___ U.S. ___, ___, 136 S. Ct. 718, 728 (2016) ("Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced."). In other cases, retroactive effect is accorded only to rules deemed substantive in character, and to "watershed rules of criminal procedure" which "alter our understanding of the bedrock procedural elements" of the adjudicatory process. *Teague*, 489 U.S. at 311, 109 S. Ct. at 1076 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S. Ct. 1171, 1180 (1971) (Harlan, J., concurring)).

Concerning the substantive/procedural dichotomy, substantive rules are those that decriminalize conduct or prohibit punishment against a class of persons. *See Montgomery*, ___ U.S. at ___, 136 S. Ct. at 729-30. Concomitantly, the Supreme Court has made clear that "rules that regulate only the *manner of determining* the defendant's culpability are procedural." *Id.* at ___, 136 S. Ct. at 730 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 2523 (2004)) (emphasis in original). As to watershed rules, to date, the Supreme Court of the United States has discerned only one, arising out of the sweeping changes to the criminal justice system brought about by the conferral of the right to counsel upon indigent defendants charged with felonies in

*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963). *See Beard v. Banks*, 542 U.S. 406, 417, 124 S. Ct. 2504, 2513-14 (2004).[1]

Judge Bowes reasoned that the *Alleyne* ruling was not substantive, since it does not prohibit punishment for a class of offenders nor does it decriminalize conduct. Rather, she described the decision as *procedurally* mandating the inclusion of any facts which will increase a mandatory minimum sentence in an indictment or information, as well as a determination by a fact-finder of those facts beyond a reasonable doubt. Nor did Judge Bowes find that the *Alleyne* decision announced an extraordinary, watershed rule of criminal procedure altering bedrock principles. In these regards, Judge Bowes highlighted that her reasoning was consistent with numerous federal courts which had determined that the new rule announced in *Alleyne* did not apply retroactively on collateral review.[2]

Judge Bowes recognized that *Alleyne* involved not only the identity of the fact-finder but also addressed the burden of proof attaching to law-based sentencing enhancements. She found this to be no different from *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), however, from which *Alleyne* derived, explaining that

---

[1] *See generally Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523 (discussing the extraordinary nature of watershed rules and opinion that "it is unlikely that any . . . 'ha[s] yet to emerge'" (quoting, indirectly, *Sawyer v. Smith*, 497 U.S. 227, 243, 110 S. Ct. 2822, 2839 (1990))); *Whorton v. Bockting*, 549 U.S. 406, 417-18, 127 S. Ct. 1173, 1181-82 (2007) (stressing the narrow scope of the procedural right exception to the general rule against retrospective application on collateral review and collecting cases in which such application was disallowed).

[2] *See, e.g.*, *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014); *Hughes v. United States*, 770 F.3d 814, 819 (9th Cir. 2014); *United States v. Redd*, 735 F.3d 88, 92 (2d Cir. 2013); *In re Payne*, 733 F.3d 1027, 1030 (10th Cir. 2013); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013).

neither this Court nor the Supreme Court of the United States had found that *Apprendi* should be retroactively applied.[3]

We allowed appeal to consider the issue, as framed by Appellant, of "[a]re the mandatory sentences imposed upon petitioner illegal pursuant to *Alleyne*?" *Commonwealth v. Washington*, ___ Pa. ___, 127 A.3d 1287 (2015). Our review of this legal issue is plenary.

Throughout his brief, Appellant characterizes his sentence as "illegal under *Alleyne*" and stresses that the PCRA provides an avenue for relief from illegal sentences. Brief for Appellant at 16 (citing, *inter alia*, *Commonwealth v. Gordon*, 596 Pa. 231, 234, 942 A.2d 174, 175 (2007), for the proposition that "it seems to be a settled question in Pennsylvania that *Apprendi*-based challenges raise questions related to the legality of a sentence"). Appellant further emphasizes that the *Alleyne* issue arises in the context of a timely-filed PCRA petition, distinguishing instances involving untimely petitions. *See generally Fahy*, 558 Pa. at 331, 737 A.2d at 223 (determining that even challenges to illegal sentences are subject to the PCRA's time limitations).

---

[3] *Accord Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014) ("[W]e have repeatedly held that *Apprendi*'s rule does not apply retroactively on collateral review."); *Sepulveda v. United States*, 330 F.3d 55, 62 (1st Cir. 2003) ("The *Apprendi* decision is about criminal procedure, pure and simple."); *Coleman v. United States*, 329 F.3d 77, 90 (2d Cir. 2003); *Ellzey v. United States*, 324 F.3d 521, 527 (7th Cir. 2003); *United States v. Brown*, 305 F.3d 304, 310 (5th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1219 (10th Cir. 2002); *United States v.* Sanchez-Cervantes, 282 F.3d 664, 673 (9th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1259 (11th Cir. 2001); *United States v. Moss*, 252 F.3d 993, 1000-01 (8th Cir. 2001); *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir. 2000). *See generally* Haifeng Peng, *Is Blakely v. Washington Retroactive?*, 27 CARDOZO L. REV. 423, 440 (2005) ("All federal circuits have unanimously concluded that *Apprendi* does not apply retroactively").

Initially, given that this matter arises on post-conviction review, we find it necessary to clarify the interrelationship between retroactivity determinations and the sentence-legality question. In this regard, it is significant that Appellant agrees that *Alleyne* established a new rule of federal constitutional law. *See* Brief for Appellant at 32.[4]

Consistent with Judge Bowes' explanation, a new rule of law does not automatically render final, pre-existing sentences illegal. A finding of illegality, concerning such sentences, may be premised on such a rule only to the degree that the new rule applies retrospectively. In other words, if the rule simply does not pertain to a particular conviction or sentence, it cannot operate to render that conviction or sentence illegal. *Accord Welch v. United States*, ___ U.S. ___, ___, 136 S. Ct. 1257, 1264 (2016) (alluding to the "general bar on retroactivity" for new constitutional rules of a procedural dimension); *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 730 ("[A] trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence."). Appellant's framing of the issue presented, as well as the bulk of his brief, disregards this necessary role of a retroactivity assessment relative to a determination of legality at the collateral review stage.[5]

---

[4] This proposition seems indisputable, given that the *Alleyne* Court expressly overruled its prior precedent in *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002). *See Alleyne*, ___ U.S. at ___, 133 S. Ct. at 2163.

[5] The Commonwealth, on the other hand, aptly summarizes the essential point as follows:

> [A]s of September 2006, there was no precedent from the United States Supreme Court, nor any Pennsylvania Court, that would have prohibited application of the instant mandatory minimum provision. Quite to the contrary, as

(continued…)

There is no question that this Court has had some difficulty defining the contours of "illegality" in the abstract for purposes of the issue preservation doctrine. *Compare Commonwealth v. Foster*, 609 Pa. 502, 524-25 n.21, 17 A.3d 332, 345-46 n.21 (2011) (Opinion Announcing the Judgment of the Court), *with id.* at 534-39, 17 A.3d at 352-54 (Castille, C.J., concurring); *id.* at 539-41, 17 A.3d 355-56 (Saylor, J., concurring); *id.* at 541-42, 17 A.3d at 356-57 (Eakin, J., concurring).[6] Any remaining uncertainty in this regard, however, does not affect our analysis, above and below. Again, if a new constitutional rule does not apply, it cannot render an otherwise final sentence illegal.

As the Commonwealth relates and Judge Bowes apprehended, new constitutional procedural rules generally pertain to future cases and matters that are pending on direct review at the time of the rule's announcement. *See Schriro*, 542 U.S.

---

(…continued)

> recently as 2002, the United States Supreme Court in *Harris v. United States* had rejected a claim that *Apprendi*, the precursor to *Alleyne*, applied to mandatory minimum sentencing provisions, and explicitly reaffirmed [the Court's previous upholding of] 42 Pa.C.S. §9712. Thus, had a court been presented with defendant's current sentencing claim at any time up to and including September 2006, when his direct appeal ended (*Alleyne* was not decided until 2013), current law would unequivocally have required its rejection. The *Alleyne* rule is therefore new, and cannot apply on collateral review except in "limited circumstances," *Schriro*[, 542 U.S. at 351, S. Ct. at 2522], *i.e.*, unless it is a "substantive or "watershed" rule under *Teague*.

Brief for Appellee at 15 (citations adjusted); *accord id.* at 20 ("The issue is not constitutionality under subsequent law . . ., but whether a sentence that was lawful when imposed must be overturned under a decision reached many years later because [such decision] applies retroactively on collateral review.").

[6] Notably, this Court has otherwise granted allocatur to determine whether an *Alleyne* violation renders a sentence illegal for issue preservation purposes. *See Commonwealth v. Barnes*, ___ Pa. ___, 122 A.3d 1034, 1034-35 (2015) (*per curiam*).

at 351-52, 124 S. Ct. at 2522 (citing *Griffith v. Kentucky,* 479 U.S. 314, 323, 328, 107 S. Ct. 708, 716 (1987)).[7]  To determine whether the rule applies retroactively to cases at the collateral review stage, additional analysis is necessary, either per *Teague* and its progeny or under some state-law formulation that is consistent with the authority recognized in *Danforth v. Minnesota*, 552 U.S. 264, 282, 128 S. Ct. 1029, 1042 (2008) (explaining that *Teague* "limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*").

In the relevant portion of his brief, Appellant primarily urges this Court to recognize an independent, state-level retroactivity jurisprudence, per *Danforth*.  Along these lines, Appellant asserts that the PCRA establishes a remedial scheme for those prisoners who are serving illegal sentences, and that he is entitled to relief under the PCRA "since his mandatory minimum sentences are illegal under *Alleyne*."  Brief for Appellant at 36-37.[8]  Appellant also urges that we should adopt a principle supporting retroactive application of new constitutional rules for violations that "implicate[] fundamental fairness and foster[] unreliability and inaccuracy in the fact-finding process."  *Id.* at 37.  Although this standard seems similar to the watershed-rules aspect

---

[7] Notably, the plurality decision of this Court in *Foster* -- in which various Justices discussed the illegal-sentence doctrine as it pertains to issue preservation -- is distinguishable from the present case both in that the case reached this Court at the direct appeal stage, and the matter did not concern a rule couched as a new one of constitutional law.  *See Foster*, 609 Pa. at 508, 17 A.3d at 335-36.

[8] This aspect of Appellant's argument is addressed earlier in our opinion, as we have explained that the legality or illegality of Appellant's sentence cannot be adjudged without reference to the legal standards governing retroactive application of new constitutional rules.

of *Teague*, Appellant obviously wishes for this Court to lower the high threshold maintained by the Supreme Court of the United States.

Alternatively, Appellant contends that the rule announced in *Alleyne* is substantive in character or meets the *Teague*-based exception to non-retroactive application of watershed procedural rules, highlighting that *Alleyne*'s holding concerns a defendant's Sixth Amendment right to a jury trial *and* to proof beyond a reasonable doubt. Appellant recognizes that the Supreme Court of the United States has "laid to rest the idea that new rules of criminal procedure which implicate jury trial rights should be applied retroactively." Brief for Appellant at 38 (citing *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523 (denominating a rule allocating decision-making authority as between juries and judges as a "prototypical procedural rule")). He nonetheless maintains that the dual-faceted aspect of *Alleyne*'s holding, also encompassing the matter of the burden of proof, justifies a different outcome.[9] In this regard, Appellant references *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970), as exemplifying the "vital role in the American scheme of criminal procedure" occupied by the reasonable doubt standard of proof. Brief for Appellant at 39 (quoting *Winship*, 397 U.S. at 363, 90 S. Ct. at 1072).

The Commonwealth, on the other hand, takes the position that this Court should continue to adhere to *Teague* rather than recognizing a new state-level retroactivity jurisprudence. *See, e.g., Commonwealth v. Bracey*, 604 Pa. 459, 485-86, 986 A.2d 128, 143-44 (2009) ("*Teague* is acknowledged as setting forth the legal framework for a principled approach to deciding when a pronouncement of law should be given effect to cases pending on collateral review[;] [t]his Court has looked to *Teague* principles when confronted with [such] questions."). The Commonwealth finds that the *Teague*

---

[9] Appellant correctly relates that *Schriro* did not specifically involve the burden-of-proof dynamic. *See Schriro*, 542 U.S. at 351 n.1, 124 S. Ct. at 2522 n.1.

approach affords appropriate respect to the strong societal interest in finality of judgments, which resides among the legislative purposes underlying the PCRA. *See generally Commonwealth v. Sam*, 597 Pa. 523, 542-43, 952 A.2d 565, 576-77 (2008) (collecting cases stressing the essential role of finality in the criminal justice system and discussing the General Assembly's efforts to foster it via the statutory prescriptions for post-conviction review).

According to the Commonwealth, adoption of Appellant's suggested approach – which the Commonwealth views as a test centered upon fundamental fairness in the abstract – would remove the essential controls on retroactive application of new rules, thus unduly undermining finality. It is for this reason, the Commonwealth observes, that the Supreme Court of the United States has maintained the distinction, in the retroactivity calculus, between general rules embodying due process and extraordinary, bedrock-altering, "watershed" rules. *See Tyler v. Cain*, 533 U.S. 656, 666 n.7, 121 S. Ct. 2478, 2484-85 n.7 (2001) (indicating that not all rules "relating to due process (or even the 'fundamental requirements of due process') alter [the] understanding" of bedrock procedural elements essential to the fairness of a proceeding (citation omitted)).

On this subject, the Commonwealth stresses that watershed rules, at the federal level, to date, encompass only a class of one, *i.e.*, the right to counsel proclaimed in the seminal *Gideon* decision, acknowledged to be "fundamental and essential to a fair trial." *Gideon*, 372 U.S. at 340, 83 S. Ct. at 794 (quoting *Betts v. Brady*, 316 U.S. 455, 465, 62 S. Ct. 1252, 1257 (1942)). In these terms, the Commonwealth explains:

> *Gideon* recognized that this principle was virtually timeless, having been recognized at the foundation of the republic; the Court explained that in enforcing this right it was not breaking new ground, but rather was "returning to . . . old precedents, sounder we believe than the new" in order to

> "restore constitutional principles established to achieve a fairer system of justice." There was also a clear national consensus. Twenty-two States filed amicus briefs denouncing the contrary rule as an "anachronism." The concurring Justices (there was no dissent) made clear that they too embraced the right to counsel as a bedrock principle.

Brief for Appellee at 23 (citations omitted).

The Commonwealth maintains, however, that *Alleyne* is vastly different. The Supreme Court of the United States, the Commonwealth notes, had twice decided that the sentencing scheme under Section 9712 of the Pennsylvania Sentencing Code was constitutional. *See McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S. Ct. 2411, 2420 (1986); *see also Harris*, 536 U.S. at 568-69, 122 S. Ct. at 2420 (reaffirming *McMillan*). The Commonwealth asserts that, in ultimately reversing course, the *Alleyne* Court "said nothing to suggest that it was recognizing anything of 'bedrock' importance." Brief for Appellee at 24. On the contrary, the Commonwealth relates:

> *Alleyne* allows the sentencing court to penalize the same conduct that triggered the mandatory statute as a matter of discretion. [*See Alleyne*, ___ U.S. at ___,] 133 S. Ct. at 2163. The Court remanded for "resentencing consistent with the jury's verdict," allowing the sentencing court to impose the exact same sentence should it so decide. Thus, nothing "fundamental" or "essential" is violated if the sentencing court elects to impose a higher sentence based on the conduct that previously triggered the statutory minimum, since *Alleyne* specifically allows that in discretionary sentencing.
>
> *Alleyne* is no more of a "bedrock" nature than similar new procedural sentencing rules that have been barred under *Teague* even in capital cases. *E.g.*, *Beard v. Banks*, 542 U.S. [at] 416-17[, 124 S. Ct. at 2513] (new rule to ensure that capital sentencing jurors are not prevented from giving effect to mitigating evidence not found unanimously was procedural under *Teague*); *Graham v. Collins*, 506 U.S. [461,] 477[, 113 S. Ct. 892, 903 (1993)] (new rule to ensure

> that capital sentencing jurors could give effect to evidence of mental retardation and abused childhood was procedural and barred by *Teague*); *Sawyer v. Smith*, 497 U.S. 227[, 244 110 S. Ct. 2822, 2832-33] (1990) (new rule preventing misleading of capital sentencing jurors by suggesting that ultimate responsibility for imposing sentence lay elsewhere was procedural and barred by *Teague*).

Brief for Appellee at 24-25. Based on such history, it is the Commonwealth's core position that "*Alleyne* clearly does not have 'the primacy and centrality of the rule adopted in *Gideon*.'" *Id.* at 25 (quoting *Banks*, 542 U.S. at 420, 124 S. Ct. at 2515).

The Commonwealth also maintains that the new *Alleyne* rule is procedural in character, because it merely regulates the manner of determining culpability as opposed to altering the range of conduct or the class of persons that the law punishes. *See id.* at 16 (citing *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 729-30). "[E]very court in the nation to consider this question in a published ruling has held that *Alleyne* does not apply retroactively on collateral review," the Commonwealth highlights. *Id.* at 10; *see also supra* note 2. The Commonwealth urges that we should reach the same conclusion here.[10]

---

[10] The Commonwealth also advances several jurisprudential reasons why we should decline to resolve this appeal, such as abstractness of the *Alleyne* rule relative to the substantial punishment which will be imposed on Appellant in all events. The present matter is an important one, however, affecting a large range of cases, this one was selected to resolve the question, and we will therefore proceed to the merits without further treatment of such collateral matters.

From a concurring posture, Justice Todd observes that our approach to the Commonwealth's additional arguments highlights the present case's importance. *See* Concurring Opinion, *slip op.* at 1. Our reasoning, however, is also based upon the fact that appeal was allowed discretely to address the *Alleyne* retroactivity issue. *See Commonwealth v. Washington*, ___ Pa. ___, 127 A.3d 1287 (2015) (*per curiam*) (granting allocatur "limited to" the issue of "[a]re the mandatory sentences imposed upon petitioner illegal pursuant to *Alleyne*"). To the extent that the concurrence suggests that a discretionary appeals court is obliged to exceed the scope of an allocatur grant to engage in a developed resolution of all issues advanced in an (continued…)

There is presently no controversy concerning the proposition that *Alleyne* sets forth a new rule of constitutional law. As to the substantive-procedural distinction, we agree with the Commonwealth that the *Alleyne* rule neither alters the range of conduct or the class of persons punished by the law. *See Montgomery*, ___ U.S. at ___, 136 S. Ct. at 729-30. Rather, the holding allocates the relevant decision-making authority to a jury rather than a judge, while establishing the beyond-a-reasonable-doubt standard as the essential burden of proof. *See Alleyne*, 133 U.S. at ___, ___ S. Ct. at 2155. Again, such matters were also central to the seminal *Apprendi* decision, *see Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2363, which the Supreme Court of the United States has never deemed to be retroactive and which is universally regarded as non-retroactive by the federal courts of appeals. *See supra* note 3; *cf. Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523 (holding that a rule requiring certain facts to be determined by a jury rather than a judge was procedural in nature, for purposes of *Teague*). *See generally Commonwealth v. Riggle*, 119 A.3d 1058, 1067 (Pa. Super. 2015) (determining that the *Alleyne* rule is procedural).[11]

We also have no basis for disagreeing with the Commonwealth that the *Alleyne* rule is not of a groundbreaking, "watershed" character. It remains lawful and, indeed,

_____

(…continued)
appellee's brief, *see* Concurring Opinion, *slip op.* at 1 (expressing the concern that our opinion "may unnecessarily serve to relax courts' obligation to consider jurisprudential bases for resolution of appeals"), we know of no authority that supports it. Indeed, from our perspective, such an approach to the discretionary review process would render many of this Court's opinions unnecessarily unwieldy.

[11] Most recently, the Supreme Court of the United States has described the essential analysis in addressing the substantive/procedural distinction under *Teague* as a functional one. *See Welch*, ___ U.S. at ___, 136 S. Ct. at 1266. We do not find this overlay to alter our above reasoning or the rationale underlying the many decisions of other courts finding the *Alleyne* rule to be non-retroactive relative to the collateral review stage.

routine for judges to increase sentences, in the discretionary sentencing regime, based on facts that they find by a preponderance of the evidence. *See Alleyne*, ___ U.S. at ___, 133 S.Ct. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury[;] [w]e have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). Thus, the inherent reliability of judge-determined facts at the sentencing stage is not directly in issue, and we find that this understanding places substantial perspective on the fairness concerns involved. *Cf. Welch*, ___ U.S. at ___, 136 S. Ct. at 1266 ("The chance of a more accurate outcome under [a] new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures 'conformed to then-existing constitutional standards'" (quoting *Teague*, 489 U.S. at 310, 109 S. Ct. at 1075)).

We recognize that, per *Alleyne*, it is no longer permissible for state legislatures to direct judges to apply specified minimum sentences based on preponderance-based judicial findings of fact. Nevertheless, we conclude that such new rule is materially different in character from *Gideon*'s prescription for assistance of counsel, which is presently enshrined as the only recognized watershed rule of criminal procedure. *See Banks*, 542 U.S. at 417, 124 S. Ct. at 2513-14; *see also supra* note 1.

As to Appellant's argument that we should recognize an independent state-level retroactivity jurisprudence grounded on fairness considerations, but lacking the constraints imposed at the federal level, we decline to do so in this case. From our perspective, balancing fairness and finality is essential in considering the appropriate retrospective effect of a new rule of constitutional procedure. *Accord Welch*, ___ U.S. at ___, 136 S. Ct. at 1266 ("The *Teague* framework creates a balance between, first, the need for finality in criminal cases, and second, the countervailing imperative to

ensure that criminal punishment is imposed only when authorized by law."). Appellant's arguments, however, touch on only one side of this equation. Unless and until developed arguments are advanced which persuade this Court that a better equilibrium can be achieved, the *Teague* construct shall remain the default approach, in Pennsylvania, to the retrospective application of new constitutional procedural rules pronounced by the Supreme Court of the United States.

We hold that *Alleyne* does not apply retroactively to cases pending on collateral review, and that Appellant's judgment of sentence, therefore, is not illegal on account of *Alleyne*.

The order of the Superior Court is affirmed.

Justices Baer, Dougherty and Wecht join the opinion.

Justice Todd files a concurring opinion in which Justice Donohue joins.

Justice Dougherty files a concurring opinion.