2016 PA Super 283

| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | | |
| v. | | |
| | | |
| SEAN JOSEPH CICCONE | | |
| | | |
| Appellant | | No. 3114 EDA 2014 |

Appeal from the PCRA Order October 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003231-2011

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN,
LAZARUS, MUNDY, OLSON, OTT AND STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED DECEMBER 13, 2016**

Sean Ciccone appeals from the order entered on October 7, 2014, denying his Post-Conviction Relief Act ("PCRA") petition. After careful review, we affirm.

Police charged Appellant with three counts of possession with intent to deliver ("PWID"), conspiracy to commit PWID, and possession of drug paraphernalia on January 6, 2011. Appellant entered a negotiated guilty plea on September 2, 2011, to two counts of PWID, and one count each of conspiracy to commit PWID and possession of drug paraphernalia. The facts underlying the plea were that police executed a search warrant at his residence on July 6, 2010. Upon entering the home, police saw a .22 rifle and marijuana in both the first floor bedroom and a back bedroom. Police also observed a double-barreled shotgun in the first floor bedroom and

another shotgun in a separate bedroom. The first floor bedroom also contained bins for drying and packaging marijuana. In the basement of the home, police found over fifty marijuana plants, potting soil, and growing chemicals. The weight of the plants was approximately thirteen pounds.

Prior to sentencing, the Commonwealth provided notice that it would seek a three-year mandatory minimum sentence, under 18 Pa.C.S. § 7508(a)(1)(ii), based on the weight of the marijuana and the number of plants recovered. This aspect of the sentence was negotiated based on a five-year mandatory minimum sentence applying due to the proximity of the drugs to firearms. Per the negotiated plea, the court imposed a sentence of three and one-half to five years incarceration on one count of PWID on September 9, 2011.[1] The court thereafter amended that sentence on December 16, 2011, to indicate that Appellant was eligible for the Risk Recidivism Reduction Incentive ("RRRI") program, which permitted Appellant to be paroled after serving thirty-five months of his sentence.

Appellant did not file a direct appeal, but presented a timely *pro se* PCRA petition on April 9, 2012. The PCRA court appointed counsel on

---

[1] Pursuant to 42 Pa.C.S. § 9756, a defendant's minimum sentence shall not exceed one-half the maximum sentence the court imposed. This, however, did not apply where mandatory minimum sentences were at issue. **Commonwealth v. Bell**, 645 A.2d 211 (Pa. 1994); **Commonwealth v. Hockenberry**, 689 A.2d 283 (Pa.Super. 1997).

October 25, 2012.[2]  The court conducted evidentiary hearings on August 15, 2013, April 21, 2014, and June 27, 2014.  At the August 15, 2013 hearing, Appellant agreed to waive all but two claims.  Specifically, he asked the PCRA court to find plea counsel ineffective for declining to challenge the weight of the marijuana and in failing to contest the number of marijuana plants recovered.

Following the original two hearings, but prior to the last hearing, counsel filed an amended petition on June 18, 2014.  In that petition, Appellant averred that his sentence was illegal based on **Alleyne v. United States**, 133 S.Ct. 2151 (2013).  The PCRA court, at the conclusion of the evidentiary hearings, directed Appellant to file a brief within thirty days regarding his claims and provided that the Commonwealth would have an additional twenty days to file a response.  The PCRA court denied relief on October 7, 2014.

This timely appeal ensued.[3] The PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on

_____

[2] Appellant filed a *pro se* notice to amend his PCRA petition on February 20, 2013, as well as a request to proceed *pro se*.  The notice to amend filing is a nullity as he was represented by counsel.  **Commonwealth v. Ali**, 10 A.3d 282 (Pa. 2010).  Appellant also did not object to being represented by PCRA counsel during the PCRA evidentiary hearings.

[3]  Appellant filed a *pro se* notice of appeal on October 20, 2014 that the Bucks County Clerk of Courts docketed and forwarded to counsel. **See**
*(Footnote Continued Next Page)*

appeal. Appellant complied, raising a single issue: whether he was illegally sentenced under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), wherein the Court ruled that, under the Sixth Amendment, any fact, other than a prior conviction, that increases a defendant's **maximum** sentence must be submitted to a jury and proven beyond a reasonable doubt. The PCRA court recognized that Appellant's position was based on arguing for the retroactive treatment of *Alleyne*, which applied *Apprendi* to mandatory **minimum** sentences. *See Alleyne, supra* at 2163 ("facts[, other than a prior conviction,] that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt). Since Appellant was sentenced under a mandatory minimum sentencing provision, the PCRA court treated the issue as raising an *Alleyne* claim rather than one under the earlier *Apprendi* case, and it denied relief based upon a finding that [4]*Alleyne* did not apply retroactively in the PCRA setting.

---

*(Footnote Continued)* ─────────

Pa.R.Crim.P. 576(A)(4) (When a "defendant is represented by an attorney" and files a document not executed by the lawyer, "the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt."). Counsel thereafter filed another, timely notice of appeal on October 30, 2014.

[4] This author filed a dissent joined by Judge Olson and Judge Stabile. Judge (now Justice) Mundy filed a concurrence joined by Judge Lazarus.

The appeal was submitted to a three-judge panel, but this Court *sua sponte* granted *en banc* review. The present *en banc* panel consisting of P.J.E. Ford Elliott, P.J.E. Bender, J. Bowes, J. Shogan, J. Lazarus, J. (now Justice) Mundy, J. Olson, J. Ott, and J. Stabile, concluded that **Alleyne** applied retroactively, and granted Appellant relief. However, that decision was withdrawn after our Supreme Court disseminated **Commonwealth v. Washington**, 142 A.3d 810, 811 (Pa. 2016), wherein the Court held that **Alleyne** does not apply retroactively "to attacks upon mandatory minimum sentences advanced on collateral review." We now re-visit Appellant's position.

Appellant claims that his sentence is illegal under **Alleyne** and that he should be granted relief since this legality-of-sentence issue, which is cognizable under the PCRA, was presented in a timely PCRA petition. Appellant's brief at 4. We first note that, in the PCRA context, appellate review is confined to a determination of "whether the PCRA court's rulings are supported by the record and are free of legal error." **Commonwealth v. Bardo**, 105 A.3d 678, 685 (Pa. 2014)

Appellant asserts that **Alleyne** and this Court's decision in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (*en banc*), renders his sentence illegal and that he should have been granted relief since he filed a timely PCRA petition and his contention is cognizable. In **Newman**, we struck down as unconstitutional the mandatory minimum

sentencing provision of 42 Pa.C.S. § 9712.1, which applied when drugs were found in proximity to guns, because that statute allocated to the sentencing court the decision, under a preponderance-of-the-evidence standard, as to whether the facts supported imposition of the mandatory sentence. *Accord Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016) (ruling that mandatory sentencing provision in 42 Pa.C.S. § 9718 was unconstitutional under *Alleyne* as it provided sentencing court was to determine its applicability at sentencing by a preponderance of the evidence and refusing to sever portion of statute that violated *Alleyne*); *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015) (same reasoning applied to statute that provided for mandatory minimum sentence when drugs were sold near to schools, 18 Pa.C.S. § 6317). Significantly, these three decisions were all issued during a defendant's direct appeal.

We recognize that, in a host of direct appeal cases, we have addressed *Alleyne* sentencing claims under the illegal sentencing paradigm and held that *Alleyne* issues present non-waivable legality of sentencing claims.[5] We

_____

[5] *See, e.g., Commonwealth v. Vargas*, 108 A.3d 858 (Pa.Super. 2014) (*en banc*); *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*); *Commonwealth v. Watley*, 81 A.3d 108 (Pa.Super. 2013) (*en banc*). However, in *Commonwealth v. Barnes*, 122 A.3d 1034, 1035 (Pa. 2015), our Supreme Court granted allowance of appeal to address whether "a challenge to a sentence pursuant to *Alleyne v. United States*, ––– U.S. ––––, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), implicates the legality of the sentence and is therefore non-waivable."
*(Footnote Continued Next Page)*

have invalidated many mandatory minimum sentencing statutes. Indeed, in ***Commonwealth v. Mosley***, 114 A.3d 1072 (Pa.Super. 2015), a direct appeal, this Court has expressly struck down the mandatory minimum sentencing provision implicated in the present case, 18 Pa.C.S. § 7508, which increased a sentence based upon the weight of the drugs, as determined at sentencing by the court under the preponderance of the evidence burden of proof.

However, Appellant conflates the concept of illegal sentences with whether ***Alleyne*** can be applied retroactively in the collateral review context. The ***Washington*** Court clearly articulated that the fact that ***Alleyne*** may raise a legality-of-sentence issue does not obviate the need for a retroactivity analysis as to whether ***Alleyne*** can be applied to a collateral attack on a judgment of sentence. Additionally, our Supreme Court squarely laid to rest the latter question by ruling that ***Alleyne*** is not retroactive under United States Supreme Court test for ascertaining retroactivity[6] and by refusing to find ***Alleyne*** retroactive on independent state grounds. It held that "***Alleyne*** does not apply retroactively to cases pending on collateral review" so that the appellant's sentence "is not illegal on account of

*(Footnote Continued)* ───────────────

[6] "The normal framework for determining whether a new rule applies to cases on collateral review stems from the plurality opinion in ***Teague v. Lane,*** 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)." ***Welch v. United States***, 136 S. Ct. 1257, 1264 (2016).

*Alleyne*." *Washington*, *supra* at 820. Thus, Appellant's sentence is not illegal under *Alleyne* because *Alleyne* is inapplicable in this collateral proceeding.

While the Supreme Court did not address this concept, we likewise reject the position that a mandatory sentencing statute rendered illegal by *Alleyne* is void *ab initio* thereby rendering any sentence imposed thereunder invalid. This conclusion flows from the progression of the law on the subject. Before one can reach a reasoned examination of whether *Alleyne* renders a mandatory minimum sentencing statute void *ab initio*, it is necessary to examine the case upon which it is premised, *Apprendi v. New Jersey*, *supra*. *Apprendi* involves the Sixth Amendment right to have an impartial jury determine each element of a crime beyond a reasonable doubt. Apprendi fired bullets into the home of an African-American family who recently moved into an all-white enclave. He pled guilty in connection with that crime and other shootings. When the plea was entered, the prosecutor reserved the right to invoke a New Jersey hate crime statute while Apprendi retained the ability to contest its application. Under the hate crime provision, the maximum sentence that Apprendi could receive pursuant to the plea increased if a trial court found that, under a preponderance-of-the-evidence standard, the defendant committed the crime to intimidate an individual or group based upon, *inter alia*, the victim's race or color. A hearing was held on the applicability of the hate crime

statute to the shooting that involved the African-American family, and the parties presented countervailing evidence regarding Apprendi's motivation for the crime. The trial court concluded that the offense was racially motivated and sentenced the defendant to an enhanced term of imprisonment by applying the hate crime law.

The **Apprendi** Court concluded that Apprendi had a Sixth Amendment right, applicable to New Jersey by virtue of the due process clause of the Fourteenth Amendment, to have a jury determine beyond a reasonable doubt whether the crime was racially motivated. It premised that holding on the fact that the issue of the motivation for his crime increased the maximum sentence that Apprendi faced. **Apprendi's** specific and oft-repeated holding is, "[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." **Id.** at 476 (quoting **Jones v. United States**, 526 U.S. 227, 243, n. 6 (1999)).

It is of key importance in the present case to note that **Apprendi's** holding was, prior to **Alleyne**, never applicable to a fact that increased a minimum sentence, including a fact that triggered a mandatory minimum sentence. The United States Supreme Court's decision in **McMillan v. Pennsylvania**, 477 U.S. 79 (1986), involved Pennsylvania's mandatory minimum sentencing statute 42 Pa.C.S. § 9712, which required imposition of a mandatory minimum sentence of five years if a defendant committed

certain offenses while visibly possessing a firearm. Under § 9712, after a defendant was adjudicated guilty of the underlying offense, the sentencing court would determine by a preponderance of the evidence whether the defendant visibly possessed a firearm. If the defendant did, then the mandatory minimum sentence of five years had to be imposed.

The defendants in *McMillan* maintained that having a sentencing court decide the visible-possession issue offended their Sixth Amendment right to a jury trial. Their position was that "visible possession of a firearm" was actually an element of any of the crimes that invoked § 9712, and thus, had to be submitted to a jury and proven beyond a reasonable doubt. The United States Supreme Court rejected that argument. The *McMillan* Court upheld the constitutionality of § 9712 because it did not increase the statutory maximum penalty for any offense committed, failed to create a separate crime calling for an additional penalty, and was inapplicable until a defendant was convicted of the particular crime for which he was to be sentenced.

*Apprendi* was filed subsequent to *McMillan*. Thereafter, in *Harris v. United States*, 536 U.S. 545 (2002), this nation's High Court re-visited *McMillan* and its viability under *Apprendi*. The statute at issue in *Harris* provided for an increase in the minimum sentence if a sentencing court determined that the defendant brandished a firearm during the commission of the underlying crime. The *Harris* Court rejected a challenge to the

holding of **McMillan** based on the **Apprendi** decision. Under **Harris***,* mandatory minimum sentences that were imposed within the maximum ceiling set by a jury verdict did not violate a defendant's Sixth Amendment right to a jury trial.

**Alleyne** applied the holding of **Apprendi** in the mandatory minimum sentencing context. Alleyne and his accomplices committed an armed robbery of a store manager who was driving the business's deposits to a bank, and he was charged with various federal offenses. An applicable federal law provided for an increase in the mandatory minimum sentence by two years if a firearm was brandished during the crime. The jury did not indicate on its verdict slip that the gun in question was visible, but the sentencing court applied the enhanced sentence of two years. Alleyne objected and maintained that raising his mandatory minimum sentence based on the sentencing court's finding that he displayed the firearm violated his Sixth Amendment right to a jury trial. The trial court, applying **Harris**, dismissed Alleyne's complaint. After the federal appeals court affirmed, the United States Supreme Court reversed and overruled **Harris**.

The **Alleyne** Court observed that **Harris** distinguished between facts that increased a statutory maximum and those that increased a mandatory minimum sentence. It concluded that this differentiation was incompatible with the rationale of **Apprendi** since mandatory minimum sentences pertain to the permissible ranges of penalties that can be imposed upon a conviction

for a crime. The United States Supreme Court reasoned that since "[m]andatory minimum sentences increase the penalty for a crime," it "follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, *supra* at 2155. The Court continued that

> *Apprendi's* definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor. Both kinds of facts alter the prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment. . . . Facts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt.

*Id*. at 2158. Thus, *Alleyne* clearly abrogated existing law. *Accord Washington*, *supra* (observing that *Alleyne* created a new rule of law); *Wolfe*, *supra* at 653 ("During Appellee's trial and prior to sentencing, the Supreme Court of the United States issued its *Alleyne* decision, overruling its own prior precedent and establishing a new constitutional rule of law[.]").

Thus, when the statute as issue herein was enacted, as well as when the sentence thereunder was imposed, it was, in fact, constitutional, and cannot be considered void from inception. *McMillan*; *supra*; *Harris*, *supra*. *Alleyne* overruled *Harris* and *McMillan* and rendered a constitutional statute unconstitutional as of the date that *Alleyne* was disseminated. Pennsylvania's mandatory minimum statutes cannot be considered unconstitutionally void *ab initio* as the United States Supreme Court initially upheld the identical sentencing paradigm in passing on the

constitutionality of 42 Pa.C.S. § 9712. ***McMillan***, ***supra***; ***see also Commonwealth v. Stokes***, 38 A.3d 846 (Pa.Super. 2011) (upholding 42 Pa.C.S. § 9712, but opining that the statute would fail if ***Harris*** and ***McMillan*** were overturned).

In ***Commonwealth v. Derhammer***, 134 A.3d 1066, 1077 n.10 (Pa.Super. 2016) (emphasis added), we set forth:

> There are exceptions to the [***Ex parte***] ***Siebold***, [100 U.S. 371 (1879)] pronouncement that an unconstitutional law is void from the outset. **That is, where there are actions taken in justifiable reliance upon a judicial ruling that the statute was constitutional at one point in time, the statute is not always considered a nullity and as if it never existed**. ***See*** 46 Am.Jur. 2d Constitutional Law § 196; ***Heilig Estate***, 13 Pa. D. & C.3d 1, *8; ***see also Lemon v. Kurtzman***, 411 U.S. 192, 199 (1973) (limiting its decision in ***Norton v. Shelby County***, 118 U.S. 425, 442 (1886), which reiterated the constitutionally void *ab initio* doctrine espoused in ***Siebold*** by stating, "However appealing the logic of ***Norton*** may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct."); ***see also*** Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 27-28 (1907) (discussing exceptions to unconstitutionally void *ab initio* doctrine).

Appellant's sentence was not illegal when imposed, he was sentenced under the statute in justifiable reliance upon existing United States Supreme Court precedent that it was constitutional, and the statute is not a nullity. Appellant's sentence can be considered illegal now only if ***Alleyne*** is held to apply retroactively. Our Supreme Court has clearly ruled in ***Washington*** that such is not the case.

- 13 -

Accordingly, the trial court did not commit an error of law or an abuse of discretion in concluding that **Alleyne** did not render Appellant's sentence illegal. We thus affirm the denial of PCRA relief.

Order affirmed.

President Judge Emeritus Ford Elliott, Judge Shogan, Judge Lazarus, Judge Olson, Judge Ott and Judge Stabile Join this Opinion.

President Judge Emeritus Bender files a Dissenting Opinion.

Judge Mundy did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016