J-E01011-16

2016 PA Super 283

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN JOSEPH CICCONE | |
| Appellant | No. 3114 EDA 2014 |

Appeal from the PCRA Order Entered October 7, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003231-2011

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, AND STABILE, JJ.

DISSENTING OPINION BY BENDER, P.J.E.        **FILED DECEMBER 13, 2016**

I respectfully disagree with the Majority's conclusion that this Court is compelled to deny Appellant relief from an unconstitutional and, therefore, illegal sentence.  As Appellant raised his meritorious illegal sentencing claim in a timely PCRA[1] petition, I believe he should be granted relief under the statutory authority of that provision alone, even if there is no mandatory requirement for retroactive application of the new constitutional rule at issue.  Accordingly, I dissent.

The statute under which Appellant was sentenced, 18 Pa.C.S. § 7508(a)(1)(ii), contravenes the Sixth Amendment and the Due Process Clause of the United States Constitution, as those constitutional provisions

_____

[1] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

were interpreted by the Supreme Court of the United States in **Alleyne v. United States**, 133 S.Ct. 2151 (2013). **See Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (striking down Pennsylvania's statutory mandatory minimum sentencing scheme under **Alleyne**); **Commonwealth v. Fennell**, 105 A.3d 13 (Pa. Super. 2014) (applying **Newman** to Section 7508). Thus, there should be no question that Appellant is currently serving an illegal sentence, viewed from the current state of the law. The issue before this Court is not, therefore, whether Appellant's sentence is illegal and/or unconstitutional (it is both); the question before this Court is whether Appellant may seek relief for this continuing injustice under the auspices of the PCRA.

In my view, at least two theories potentially support granting relief. First, as discussed (and rejected) by the Majority, is whether Appellant is entitled to relief by the retroactive effect of **Alleyne** and its progeny, under the framework established in **Teague v. Lane**, 489 U.S. 288 (1989) (plurality). In **Teague**, the Supreme Court of the United States established a framework for determining whether retroactive application of new constitutional rules is *required* on collateral review. The general rule holds that "new constitutional rules of criminal procedure will not be applicable" on collateral review, unless they fall within two exceptions. **Id.** at 310. "[T]he exceptions extend to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense, … and watershed

rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." ***Commonwealth v. Cunningham***, 81 A.3d 1, 4 (Pa. 2013) (internal citations and quotation marks omitted).

As the Majority in this case correctly surmised, in ***Commonwealth v. Washington***, 142 A.3d 810 (Pa. 2016), our Supreme Court rejected a claim that the new rule announced in ***Alleyne*** falls within the scope of either of the two ***Teague*** exceptions. Despite my own misgivings about this conclusion,[2] I recognize the binding nature of the ***Washington*** decision, and its consistency with other pertinent authorities. ***See e.g.***, ***U.S. v. Winkelman***, 746 F.3d 134, 136 (3d Cir. 2014) (holding that the "***Alleyne*** decision does not fit into either" ***Teague*** exception category and, therefore, could not circumvent the federal Habeas Corpus statute's 1-year period of limitation, as it did not fall within the exception to that deadline provided for new rights recognized "by the Supreme Court and made retroactively applicable to cases on collateral review[,]" 28 U.S.C. § 2255(f)(3)). Accordingly, I agree that this Court cannot grant relief to Appellant premised on the theory that retroactive application of ***Alleyne*** is *required* under the ***Teague*** framework.

---

[2] I believe that in Pennsylvania, at least, the implementation of ***Alleyne*** has been a watershed decision affecting sentencing procedure, given the patent unconstitutionality of Pennsylvania's now-defunct mandatory minimum sentencing scheme.

However, while **Teague** provides the framework to determine whether retroactive application of **Alleyne** on collateral review is *required*, it does not at all bar Pennsylvania's General Assembly from providing relief to persons sharing Appellant's procedural posture. That brings us to the second theory supporting granting relief in this case: the PCRA statute explicitly provides for it.

It must be acknowledged that

> the **Teague** rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings. It was intended to limit the authority of federal courts to overturn state convictions—*not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions*.

**Danforth v. Minnesota**, 552 U.S. 264, 280-81 (2008) (emphasis added).

Thus, **Teague** dictates whether a decision *must* be applied retroactively as a federal constitutional matter.[3] It does not purport to be the last word on whether other remedies exist under Pennsylvania law for the correction of illegal sentences. Indeed, as **Danforth** suggests, when **Teague** does not demand retroactive application of new constitutional rules,

---

[3] Technically, the state courts are free to adopt their own retroactivity principles governing whether they give retroactive effect to new federal constitutional decisions. However, our Supreme Court, like many others, has chosen to adhere to the **Teague** framework in determining the retroactivity of new, federal constitutional decisions. **Cunningham**, 81 A.3d at 8 ("This Court … generally has looked to the **Teague** doctrine in determining retroactivity of new federal constitutional rulings.").

the states are still free to provide a remedy above and beyond what is required under *Teague*. I believe that such relief is afforded by the PCRA statute, but only for timely PCRA petitions.

A Pennsylvania state court's authority to grant relief on collateral review is dictated by the PCRA statute. *See* 42 Pa.C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect ...."). Moreover, the PCRA statute expressly states that it "provides for an action by which persons convicted of crimes they did not commit *and persons serving illegal sentences* may obtain collateral relief." *Id.* (emphasis added).

Notably, Section 9542 does not delineate between sentences which were illegal when issued and sentences which became illegal at a later time. Indeed, the use of the term "serving" suggests that no such distinction was intended. This is not to say that the legislature did not contemplate retroactivity concerns. It is patently obvious that it did so given the provision addressing the retroactive effect of newly recognized constitutional rights in *untimely* PCRA petitions. *See* 42 Pa.C.S. § 9545(b)(1)(iii) (permitting consideration of an untimely PCRA petition where "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply

retroactively"). Indeed, it is precisely because the PCRA statute specifically addresses retroactivity concerns with regard to untimely PCRA petitions that the absence of retroactivity-concerned language in the provisions governing timely petitions strongly suggests the legislature was not concerned with retroactivity issues for timely PCRA petition. In any event, even if the PCRA is ambiguous with regard to retroactivity in those provisions, the principle of lenity generally dictates that whatever ambiguity exists must be resolved in favor of the defendant in criminal case.

The Majority cleverly avoids this second theory by narrowly framing the concept of an 'illegal sentence' as a sentence which was illegal at its inception. Accordingly, under such logic, since Appellant's sentence was not illegal when issued, he is not now serving an illegal sentence. However, I believe the Majority misapprehends what constitutes an illegal sentence, particularly with respect to the statutory language at issue, which does not speak to the state of the law at the time of sentencing, but instead to whether a petitioner is a "person[] serving [an] illegal sentence[,]" 42 Pa.C.S. § 9542. **See** Majority Opinion at 14 ("Appellant's sentence can be considered illegal now *only* if **Alleyne** is held to apply retroactively.") (emphasis added).

The problem with this assumption is that **Teague**-related retroactivity principles do not govern whether a sentence remains legal in the present, in light of a different understanding of constitutional law in the past when the

sentence was imposed. The question of legality turns on whether Appellant's sentence contravenes the Sixth Amendment and Due Process Clause as understood today under *Alleyne*. Retroactivity jurisprudence instead governs whether courts are required to grant relief from illegal sentences, regardless of the legality when they were imposed. Indeed, there would be no need for retroactivity principles at all in this setting if the only essential question is, 'what was the state of the law when the sentence was imposed?'

The *Teague* decision, and the retroactivity principles it espouses, were specifically adopted from "Justice Harlan's view of retroactivity for cases on collateral review." *Teague*, 489 U.S. at 310. In one of Justice Harlan's concurrences, which later formed the basis for the *Teague* decision, he opined:

> Habeas corpus always has been a collateral remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed. Indeed, *this interest in finality might well lead to a decision to exclude completely certain legal issues, whether or not properly determined under the law prevailing at the time of trial, from the cognizance of courts administering this collateral remedy.*

*Williams v. U.S.*, 401 U.S. 667, 682–83 (1971) (J. Harlan, concurring) (emphasis added). Under Justice Harlan's view, retroactivity principles do

not operate to decide whether Appellant's sentence is currently illegal given its apparent legality when imposed. Retroactivity principles concern whether the court should act to address an issue, "whether or not properly determined under the law prevailing at the time of trial[.]" *Id.* Moreover, Justice Harlan recognized that "those responsible for defining the scope of the writ," *i.e.*, the federal legislature, were properly tasked with weighing the interest in "readjudicating convictions" based on a subsequent understanding of the law, against the interest in the finality of judgments. Hence, retroactivity analysis concerns whether the courts are obliged to grant relief for illegal sentences, not whether sentences are illegal or not.

The test for illegality must be the state of the law in the present, not the state of the law at some prior time. If this were not true, there would simply be no need for retroactivity analysis for the application of new rules. By definition, the prior sentence would always be "legal" today because it was "legal" when issued. What is the purpose of retroactivity analysis in illegal sentence jurisprudence if, by definition, new rules never rendered illegal old sentences?

In sum, I believe that while it is clear that **Washington** precludes this Court from being *required* to give retroactive effect to **Alleyne** under **Teague**, the PCRA statute by its own terms provides relief from any illegal sentence if such a claim is raised in a timely PCRA petition. Under the current state of the law, Appellant's sentence is illegal and, therefore, I

believe his timely PCRA petition entitles him to relief under the terms of the PCRA itself. As the Majority reaches a different conclusion, I respectfully dissent.