J-S67018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD J. MCGUIGAN | : | |
| | : | |
| Appellant | : | No. 222 EDA 2018 |

Appeal from the PCRA Order December 18, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000436-2005,
CP-15-CR-0001904-2005, CP-15-CR-0001905-2005,
CP-15-CR-0001906-2005, CP-15-CR-0001907-2005,
CP-15-CR-0002093-2008, CP-15-CR-0002094-2008,
CP-15-CR-0002099-2008, CP-15-CR-0002187-2008,
CP-15-CR-0004199-2006, CP-15-CR-0004283-2005,
CP-15-CR-0004284-2005

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 18, 2019**

Appellant Donald J. McGuigan appeals *pro se* from the order denying his

first Post Conviction Relief Act[1] (PCRA) petition after an evidentiary hearing

limited to some of his issues.  On appeal, Appellant raises multiple claims,

including that he was not granted a full and fair PCRA evidentiary hearing,

that trial counsel was ineffective in litigating a purported Pa.R.Crim.P. 600

violation, and that the Commonwealth violated **Brady v. Maryland**, 373 U.S.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

83 (1963). Appellant also alleges errors in his stipulated bench trial and claims that his Sixth Amendment right to conflict-free counsel was violated. We affirm.

We state the facts and procedural history as set forth by a prior panel of this Court:

> In November of 2004, Appellant was arrested and held on state drug charges in California as he was unable to post bail. Several weeks later, charges were also filed against him in Pennsylvania, and a Chester County arrest warrant issued. After he had been held for California for 30 days, the state charges there were withdrawn, and federal charges were instituted on which he was held without bail for the next 2½ years.
>
> In March of 2005, Appellant was charged at 4 more case numbers with drug sales to one Gladys Haase (county cases), and warrants issued which the Chester County Enforcement Bureau formally requested California authorities to lodge as detainers against Appellant in California. Throughout the time Appellant was in custody in California, both the Chester County extradition coordinator and a deputy district attorney regularly telephoned California authorities to determine whether California state charges had been resolved, making Appellant available for extradition and local prosecution. Both were repeatedly told that proceedings against him were in train [sic]. In the meantime, more Pennsylvania charges were brought, (state police cases), and in October of 2006, all pending charges were bound over for court. In March, April, May, July, August, September, and November of 2006 continuance orders were entered and the run time charged to Appellant given his incarceration in another state; although he was sent notice, neither he nor his local attorney responded in any way.
>
> The attorney, John Duffy, Esq., [of the firm Duffy, Green, and Redmond,] had been retained by Appellant to "represent[ ] [his] interests[,]" even before Pennsylvania charges had been brought against him. However, although Mr. Duffy was engaged in negotiations with the Chester County district attorney, he made no entry of appearance until Appellant was finally returned to Pennsylvania. In February of 2007, the federal charges against

- 2 -

Appellant were dropped, but he remained incarcerated on the Chester County detainers. In March of 2007, Appellant waived extradition; in April yet another continuance order charged to Appellant elicited no response.

Upon his arrival in Pennsylvania in May of 2007, Appellant successfully requested remand for preliminary hearings and moved for a continuance; hearings were scheduled for September 28, 2007. However, in October, the county cases were voluntarily withdrawn before the magisterial district judge,[2] as Haase, the essential witness in the county cases, had absconded and her whereabouts were unknown. Attorney Duffy was notified of the Commonwealth's action. Because these cases had already been bound over for court, their docket numbers continued to appear on the trial list, thus the Commonwealth's request that they be stricken by a *nolle prosequi* order was granted.

In October of 2007[,] Appellant requested a continuance on grounds that Attorney Duffy was attached for trial; in November, Attorney Duffy was discharged by Appellant and permitted to withdraw. Replacement counsel, Justin McShane, Esq., entered his appearance in December, and was granted an additional continuance. The following January[,] Haase reappeared, and the county cases involving her were refiled in April. Meanwhile, Appellant had sought continuances in January and March of 2008, and in April was granted both a continuance and release on nominal bail. When the county cases were refiled, Appellant, returned to custody, sought quashal of the court's *nolle prosequi* order, and moved for discharge under Pa.R.Crim.P. P. 600. After hearings on these motions and a stipulated bench trial, Appellant was convicted on May 28, 2008 . . . .

**Commonwealth v. McGuigan**, 1921 EDA 2008, at 1-4 (Pa. Super. filed July 7, 2009) (unpublished mem.). At the bench trial, the parties had stipulated

---

[2] On October 18, 2007, the Commonwealth voluntarily withdrew the charges. N.T., 10/18/17, at 2.

to facts that could establish Appellant's guilt to twenty-four[3] counts of possession with intent to deliver (PWID) cocaine and methamphetamine.[4] As a result, the trial court convicted Appellant and sentenced him to a negotiated sentence of twenty to forty years' imprisonment. *Id.* at 1.

On direct appeal, Appellant claimed that the Commonwealth violated Pa.R.Crim.P. 600. *Id.* at 4. Specifically, Appellant argued only that the Commonwealth failed to exercise due diligence to extradite him from federal custody in California. *Id.* at 6. This Court held otherwise, concluding that the record established detainer requests, "monthly contact by county extradition specialists, and periodic contact between the district attorney and the federal prosecutor . . . ." *Id.* at 7. The Court also rejected Appellant's argument that Pennsylvania should have extradited him from federal custody. *Id.* at 7-8. The Court reasoned that the scope of the extradition statute excluded the federal government. *Id.* (discussing 42 Pa.C.S. §§ 9122, 9126).

Also on direct appeal, Appellant argued that the law firm of Duffy, Green, and Redmond, which represented him during some preliminary proceedings, had a conflict of interest. The ***McGuigan*** Court detailed and resolved Appellant's issue as follows:

---

[3] The ***McGuigan*** Court inadvertently misstated the total number of convictions as twenty-five.

[4] The parties agreed to a stipulated fact trial and a negotiated sentence instead of a guilty plea so Appellant could preserve and raise a Pa.R.Crim.P. 600 claim on direct appeal.

Attorney Duffy's firm represented four persons named as co-defendants or confidential informants in the cases on which Appellant was charged; "[d]uring that firm's representation of [these] cooperating charged co-defendants or confidential informants, guilty pleas or negotiated tentative plea[] deals were negotiated or consummated between the Commonwealth and [these persons] that required their testimony against [Appellant].". Three of the four named persons were serving prison terms as a result of their pleas. Thus, Appellant claims, "the verdicts should be set aside; a new legitimate and meaningful hearing into these matters is warranted where [Appellant] is present.". We decline to do so, as Appellant has failed to assert prejudice of any sort occasioned by Attorney Duffy's representation, and indeed Appellant was represented at trial by replacement counsel. Further, as the trial court points out, once a defendant has been convicted at trial, any defects in the preliminary hearing are rendered immaterial.

*Id.* at 11-12 (citations and footnote omitted). This Court ultimately affirmed Appellant's judgment of sentence. *Id.* at 1. Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on October 13, 2010.

On July 25, 2011, the PCRA court docketed Appellant's first PCRA petition, which he filed *pro se*. The PCRA court ordered Appellant to notify the court if he was requesting PCRA counsel. Order, 8/1/11. On August 30, 2011, Appellant filed an affidavit reflecting his intention to proceed *pro se*. On December 14, 2011, the court scheduled a *Grazier*[5] hearing, which occurred on January 19, 2012. After that hearing, the court appointed PCRA counsel. Order, 1/27/12.

---

[5] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

On September 11, 2015, the PCRA court docketed Appellant's *pro se* motion for a **Grazier** hearing and a 176-page amended PCRA petition. Appellant's *pro se* amended petition listed eighty-five witnesses he wished to subpoena and have testify at the evidentiary hearing. Appellant's Am. Pet., 9/11/15, at 164-73. Appellant's petition classified the witnesses into several groups and briefly summarized the proposed testimony of each group. **Id.**

On September 24, 2015, the PCRA court ordered appointed PCRA counsel to review Appellant's September 11, 2015 filings. Appointed counsel filed a responsive letter on October 7, 2015, stating, among other things, that Appellant's *pro se* petition raised sixty allegations of ineffective counsel and trial court error.

On November 6, 2015, the PCRA court scheduled a hearing on Appellant's **Grazier** motion, which was held on February 8, 2016. On June 10, 2016, the PCRA court granted Appellant's request to proceed *pro se*. Order, 6/10/16.

On September 26, 2017, the PCRA court ordered an evidentiary hearing, limited to the following issues:

> 1) The "**Brady**" issue referenced at Paragraphs 144-150 of [Appellant's] amended PCRA petition. At the hearing[, Appellant] is directed to specifically identify any **Brady** material not disclosed.
>
> 2) The discovery issues referenced at Paragraph 216 of [Appellant's] amended PCRA petition. At the hearing[, Appellant] is directed to identify and establish any prejudice he suffered as a result of these issues.

3) The non-disclosure of [Appellant's] wife's cooperation agreement, referenced at Paragraph 237 of [Appellant's] amended PCRA petition. At the hearing[, Appellant] is directed to identify and establish any prejudice he suffered as a result of this issue.

4) The attorney ineffectiveness claims outlined generally at pages 145-151 of [Appellant's] petition regarding pre-trial issues only; specifically those claims concerning pretrial arraignment, preliminary hearings, and counsel's representation of [Appellant's] co-defendants. At the hearing[, Appellant] is directed to identify and establish any prejudice he suffered as a result of these issues.

Order, 9/26/17. The PCRA court did not advise Appellant of its intention to dismiss the other claims under Pa.R.Crim.P. 907.

On October 20, 2017, the PCRA court docketed Appellant's motion to compel nine witnesses to appear at the PCRA hearing. None of the nine witnesses Appellant identified was his former counsel. On November 14, 2017, the PCRA court denied the motion, reasoning that it "appears to the [c]ourt that the testimony of the persons listed in [Appellant's] motion would not be relevant to the limited issues to be heard. [Appellant] has not established the relevancy of any of these witnesses to the issues being heard." Order, 11/14/17, at 1 n.1.[6]

Appellant nonetheless subpoenaed at least two witnesses who appeared at the December 6, 2017 evidentiary hearing: the trial prosecutor and one of

_____

[6] Although the order was docketed on November 13, 2017, it was served the next day.

his former counsel, Joseph Green, Esq., of the firm Duffy, Green, and Redmond. N.T. PCRA Hr'g, 12/6/17, at 3. Because no witnesses other than Appellant testified, it appears that the PCRA court excused them during the hearing. The PCRA court denied Appellant's amended PCRA petition on December 18, 2017. Order, 12/18/17.[7] The PCRA judge assigned to this case retired, and a new judge was assigned.

Appellant timely appealed. On January 17, 2018, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days. Appellant timely complied on February 5, 2018.

The newly-assigned PCRA judge filed a Pa.R.A.P. 1925(a) opinion that stated, in pertinent part, as follows:

> As this court did not preside over any part of this case prior to the instant appeal, I have little to contribute by way of explanation for the actions and decisions of [the retired judge]; however, based upon my review of the record, I agree with the decision of [the retired judge] and see no error of law or abuse of discretion regarding the dismissal of [Appellant's] amended PCRA petition for lack of evidence. I have nothing further with which to supplement this opinion.

Order, 3/9/18.[8]

---

[7] Because the order denied Appellant's PCRA petition, we presume the order resolved all claims raised in that petition, including the claims that were the subject of the evidentiary hearing. *See* Order, 12/18/17.

[8] Also on March 9, 2018, without leave of court, Appellant filed an amended Rule 1925(b) statement, which the PCRA court never addressed. We do not quote the eleven issues in the amended statement, but they generally reframe most of the issues in Appellant's original Rule 1925(b) statement as challenges

Appellant raises the following issues:

[1]. Whether the court committed reversible error by dismissing the amended PCRA petition without a full and fair evidentiary hearing or granting relief for the following issues where the petition[']s averments, if taken as true, warrants PCRA evidentiary hearings and relief and by failing to submit findings of fact and conclusions of law in support of said denial[.]

[2]. Whether the court committed reversible error by subjecting the appellant to proceedings in a court without jurisdiction over the person or subject matter combined with a flagrant and willfull [sic] denial of the Appellant's rights to due process of law over a 3 year period and by finding defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[3]. Whether the court committed reversible error by finding that the Commonwealth's flagrant and willful violations of Rule 573 and **Brady** combined with their 3 overt frauds perpetrated upon the court did not prejudice the Appellant by subverting the truth determining process and by finding that defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[4]. Whether the court committed reversible error by dismissing the amended PCRA petition without a hearing or relief and in finding that the Commonwealth's stipulated testimony at trial was sufficient to find each and every element of the crimes for which the Appellant was convicted and by finding that defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[5]. Whether the court committed reversible error as regards sentencing the Appellant to an illegal sentence under 18 Pa.C.S. § 7508 and in finding that the Commonwealth's evidence at trial was sufficient as to the weight of the drugs required to trigger the mandatory minimums under 7508 and by finding that defense

_____

to the effectiveness of defense counsel. Because Appellant's amended PCRA petition raised ineffectiveness claims, some of which the PCRA court held an evidentiary hearing on, we decline to find Rule 1925(b) waiver.

counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[6]. Whether the court committed reversible error whereby the court violated and breached the terms and conditions of the signed contract for a stipulated waiver trial by erroneously asserting that the Appellant had agreed to and been found guilty at a stipulated fact trial thereby lessoning [sic] at trial the Commonwealth's requisite burden of proof to convict and as a matter of law requiring the court to find the Appellant guilty and by finding that defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[7]. Whether the court committed reversible error by allowing the Appellant to waive a jury trial and proceed to a stipulated waiver bench trial where the stipulations and proceedings on May 28, 2008 were involuntary, unknowing and unintelligent and by finding that defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

[8]. Whether the court committed reversible error as regards the manifest and of record 6th Amendment violations of the Appellant's right to conflict free counsel and by finding that defense counsel was not ineffective for failing to raise, litigate or properly litigate said issues[.]

Appellant's Brief at 4-6 (full capitalization omitted).

## 1. Full and Fair Evidentiary Hearing

In support of his first issue, Appellant argues that the PCRA court erred by preventing him from presenting the testimony of any witness. *Id.* at 20. Appellant appears to argue that his amended PCRA petition raised numerous issues that required witnesses—witnesses that the PCRA court prevented him from calling at the evidentiary hearing. *Id.*

The standard of review of an order resolving a PCRA petition is well-settled.

- 10 -

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

This Court will not act as counsel and will not develop arguments on behalf of an appellant.

*Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citations omitted).

Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa. Super. 2005) (citation omitted).

- 11 -

Returning to his first issue, other than the two witnesses identified above, Appellant did not name the other witnesses in his appellate brief. He did not discuss any witness's proposed testimony and how the absence of such testimony prejudiced him. Appellant's brief did not discuss the proposed testimony of the two witnesses that actually appeared at his evidentiary hearing, the prosecutor and Attorney Green, notwithstanding the court's November 14, 2017 order barring witness testimony. Indeed, Appellant's brief did not detail any of the proposed testimony of any of the eighty-five witnesses identified in his PCRA petition. Although we construe his *pro se* brief liberally, we will not review the extensive record and speculate as to each witness's testimony. *See Kane*, 10 A.3d at 331; *Adams*, 882 A.2d at 498. In sum, Appellant has not established the PCRA court error. *See Ford*, 44 A.3d at 1194.

**2. Rule 600 Violation By Failing to Timely Charge Appellant**

In support of his second issue, Appellant argues that the Commonwealth violated Rule 600. Appellant's Brief at 26-37.[9] Although he framed the issue as "defense counsel was . . . ineffective for failing to raise, litigate or properly litigate said issue[]," *id.* at 4, Appellant did not address counsel's purported ineffectiveness other than baldly alleging that counsel was ineffective "pre-

---

[9] Appellant's third issue raises a different Rule 600 claim, which we discuss below.

trial, post-trial" and on direct appeal by not raising a Rule 600 challenge. *Id.* at 37.

By way of guidance:

[c]ounsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner.

The petitioner must plead and prove all three prongs, and the failure to establish any one prong warrants denial of an [ineffective assistance of counsel] claim.

*Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa. Super. 2018) (citations omitted). Boilerplate or undeveloped claims of counsel's ineffectiveness, however, cannot establish counsel's ineffectiveness. *Commonwealth v. Jones*, 876 A.2d 380, 386 (Pa. 2005).

Here, Appellant has not argued whether counsel's purported actions or inactions lacked any reasonable basis and has not identified the alleged prejudice that inured to him. *See generally Becker*, 192 A.3d at 112. Appellant's boilerplate allegation of counsel's ineffectiveness, *see* Appellant's Brief at 37, is insufficient. *See Jones*, 876 A.2d at 386. Moreover, Appellant raised this particular Rule 600 violation on direct appeal, and that Court held there was no error. *See McGuigan*, 1921 EDA 2018, at 7-9. Thus, to the extent Appellant has reiterated his allegations of a Rule 600 violation here, they have been previously litigated or otherwise waived. *See* 42 Pa.C.S. §

9543(a)(3) (petitioner, to be eligible for PCRA relief, must establish that allegation of error "has not been previously litigated or waived").

### 3. Rule 573 Compliance, *Brady* Violations, and Rule 600

A. *Rule 573 Compliance*

Appellant, in support of his third issue, raises three related arguments. First, Appellant claims the Commonwealth failed to comply with the discovery requirements of Pa.R.Crim.P. 573 and **Brady**. Appellant's Brief at 39. Specifically, with respect to Rule 573, Appellant contends that the Commonwealth did not complete its discovery obligations until April 15, 2008, over a month before the May 28, 2008 stipulated fact trial. **Id.** at 40. Appellant argues that the late completion prejudiced him. **Id.** at 40-41. Appellant broadly opines that counsel was ineffective. **Id.** at 38.

Pennsylvania Rule of Criminal Procedure 573 provides for informal and mandatory discovery. **See generally** Pa.R.Crim.P. 573. Rule 573(E) sets forth a remedy for any violation:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). As we explained in **Commonwealth v. Causey**, 833 A.2d 165 (Pa. Super. 2003):

> A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not

- 14 -

automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Id.* at 171 (citations and quotation marks omitted). Thus, in the PCRA context, a petitioner must establish how counsel was ineffective. *See Becker*, 192 A.3d at 112.

Here, as Appellant notes above, the Commonwealth complied with Rule 573, over a month before Appellant's trial. Other than a broad claim of ineffectiveness, Appellant has not articulated how he was prejudiced by counsel's failure to file an appropriate motion after the Commonwealth turned over the last of the discovery. Appellant's boilerplate claim of counsel's ineffectiveness does not establish prejudice. *See Jones*, 876 A.2d at 386; *Becker*, 192 A.3d at 112. To the extent Appellant's argument could be construed independent of the ineffectiveness allegation, Appellant waived the issue by failing to raise it on appeal. *See* 42 Pa.C.S. § 9544.

### B. *Brady* Violations

Appellant's second argument in support of his third issue alleges numerous *Brady* violations, which we group as follows. Initially, Appellant contends that the Commonwealth failed to disclose all of the interviews and statements of three confidential informants. Appellant's Brief at 42. Next, he maintains that the Commonwealth failed to disclose cooperation deals with those three confidential informants. *Id.* Appellant claims that the Commonwealth withheld statements and documentation about meetings with

two co-defendants. *Id.* at 42-43. He argues that the Commonwealth failed to disclose the authorizations for the wiretaps and the resulting tapes. *Id.* at 43. Further, Appellant argues the Commonwealth withheld letters purportedly written by him and sent to two other co-defendants, which purportedly contained exculpatory evidence. *Id.* at 44. Appellant also argues that the Commonwealth lied in two affidavits of probable cause by misrepresenting that the information within those affidavits were from one co-defendant, when it was from another co-defendant. *Id.* Appellant claims prejudice *per se* and summarily asserts that trial counsel was ineffective by failing to move to suppress the "withheld" evidence. *Id.* at 52.[10]

Recently, the Pennsylvania Supreme Court reiterated the interplay between allegations of *Brady* violations and claims of counsel's ineffectiveness:

Due process is offended when the prosecution withholds evidence favorable to the accused where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

Pursuant to *Brady* and its progeny, the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. However, there is no constitutional requirement that the prosecution make

---

[10] To the extent Appellant interjects a Rule 600 argument, we have previously rejected it for reasons set forth above. *See* Appellant's Brief at 51.

a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

Instead, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A defendant thus need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. Rather, a defendant need only show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

***Commonwealth v. Natividad***, \_\_\_ A.3d \_\_\_, \_\_\_, 2019 WL 286564, *11

(Pa. filed Jan. 23, 2019) (quotation marks and citations omitted).

Initially, we have reviewed every document cited by Appellant. ***See***

Appellant's Brief at 42-66.[11] None of them substantiates Appellant's

assertions that the Commonwealth suppressed material evidence. Each cited

document was either previously produced by the Commonwealth, publicly

available, *e.g.*, a docket, or never existed, *e.g.*, the purported wiretap tapes

_____

[11] We did not review the extensive record for the documents lacking record citation, *e.g.*, purported exculpatory letters written by Appellant to two of his co-defendants. ***See*** Appellant's Brief at 44.

that the Commonwealth averred never existed because the interception equipment had failed. **See** N.T. Trial, 5/28/08, at 8-9. We add that Appellant mischaracterized all of the cited documents. **Compare, e.g.**, Appellant's Brief at 42 (citing to record document purportedly establishing Commonwealth deal with confidential informant), **with** Ex. A-7 to Appellant's Am. Pet., 9/11/15 (aforementioned record document, which is Commonwealth's letter to Appellant's counsel disclosing identities of confidential informants but which did not establish any Commonwealth deal).

Instantly, none of the cited documents exculpated Appellant. **See Natividad**, 2019 WL 286564 at *11. Moreover, to the extent any of the documents could be construed as or otherwise used for impeachment, Appellant merely alleged prejudice *per se*. **See** Appellant's Brief at 52. Appellant did not detail any prejudice from any particular piece of allegedly withheld evidence, which as noted above, was previously disclosed by the Commonwealth, publicly available, or never existed. Appellant has not explained, given the facts he stipulated to at trial, how any of the purportedly withheld documents undermined confidence in the verdict. **See Natividad**, 2019 WL 286564 at *11. The trial court had repeatedly warned Appellant that based on the stipulated facts, there would be little chance of being found not guilty. **See, e.g.**, N.T. Trial, 5/28/08, at 13-14 (quoted below).

## C. *Rule 600 Violation*[12]

Third, Appellant raises a Rule 600 claim different from the Rule 600 claim in his second issue. Specifically, Appellant argues that the Commonwealth violated Rule 600 based on the false and purportedly undisclosed or untimely disclosed documents and testimony. Appellant's Brief at 67.

We briefly reiterate that in October 2007, the Commonwealth withdrew the charges in four cases because Haase, the key witness, was unable to be located. In January 2008, Haase was arrested in Chester County, and the Commonwealth reinstated the previously-withdrawn charges in April 2008.

The Commonwealth filed a motion to increase Appellant's bail. At the April 28, 2008 hearing on the Commonwealth's motion, the assistant district attorney represented to the trial court that Haase had been extradited from Nevada. N.T. Motion to Increase Bail, 4/28/08, at 12-13. We note that the actual hearing on Appellant's Rule 600 motion occurred on May 14, 2008, during which there was no relevant discussion of Haase, Nevada, or when and where Haase was apprehended.[13]

---

[12] As discussed herein, this particular Rule 600 issue is different than the Rule 600 issue raised in Appellant's second issue.

[13] The only reference to Haase was when Appellant's counsel asked the trial court to take judicial notice that the offense tracking numbers of the cases at issue did not match the offense tracking numbers listed on a particular

At Appellant's stipulated fact trial, there were a few live witnesses.[14]  In pertinent part, the assistant district attorney, who was present at the April 28, 2008 hearing on the Commonwealth's motion to increase bail, testified as a fact witness.  Specifically, the assistant district attorney testified that although he was under the impression that Haase was extradited from Nevada when he made that representation to the court, he "may have been mistaken."  N.T. Trial, 5/28/08, at 62.  A police detective also testified that he interviewed Haase after her arrest, and Haase said she went to Las Vegas "and the surrounding areas of Las Vegas."  *Id.* at 48.

With respect to the Commonwealth's efforts in locating Haase, the detective testified as follows:

> [Appellant's counsel:] So were there any methods or means that you utilized such as a search on NCIC[,] the National Crime Information Computer[,] for the whereabouts of Ms. Haase?
>
> [Detective:] You can't do that.
>
> [Appellant's counsel:] Did you put any sort of entry into the NCIC that she was a wanted person?
>
> [A:] Probation had her out for a probation violation.  That's how she ended up back in Chester County Prison.
>
> [Appellant's counsel:] Did you lodge a fugitive warrant or material, apply for a material witness bail for Ms. Haase?

---

Commonwealth exhibit, which pertained "to the Gladys Hasse" cases.  N.T. Rule 600 H'rg, 5/14/08, at 121.

[14] As noted above, Appellant wished to stipulate to the facts in order to preserve his Rule 600 claim for appeal.  As a result, the Commonwealth called two witnesses and Appellant also testified.

[A:] No, because she was already out at the prison.

[Appellant's counsel:] I'm sorry. During the time frame from 2005 when you discovered that she had absconded from the jurisdiction until September 28th 2007, the date of the preliminary hearing, did you attempt to file any sort of fugitive notice or some sort of fugitive proceedings?

[A:] No, we made an effort. She was already wanted by probation for failure to appear. [The assistant district attorney] and I talked prior to that. He was aware and he was going to be approve [sic] jurisdiction anywhere in the United States. Depending on the crime, there's different zones, but [the assistant district attorney] agreed to have her brought back from wherever she was.

[Q:] So she was basically a very wanted person, resources are unlimited, we need her back; is that correct?

[A:] If she was picked up by law enforcement anywhere within the United States, [the assistant district attorney] authorized me to have returned to Chester County regardless of location.

N.T. Trial, 5/28/08, at 48-49. As noted above, the court ultimately convicted Appellant.

Subsequently, in late 2010 and early 2011, Appellant obtained documents that purported to establish that (1) the Las Vegas police department had no record of Haase, (2) Haase was allegedly arrested in Lancaster County, Pennsylvania in early January 2008 (after the Commonwealth had withdrawn its charges in October 2007), and (3) Haase was released to Chester County police. *See* Am. Pet., 9/11/15, at App. G.; *accord* Appellant's Brief at App. N-P. Subsequently, the Commonwealth reinstated the charges in April 2008.

- 21 -

On appeal, Appellant highlights this purported discrepancy between the Commonwealth's representations on April 28 and May 28, 2008—that Haase was arrested in and extradited from Nevada—with the documents that allegedly establish that Haase was arrested in Lancaster County and that Las Vegas police had no knowledge of her arrest. Appellant's Brief at 75. He argues that his then-counsel was ineffective by failing to investigate Haase's arrest and extradition from Nevada, which would have impacted the calculation of time attributable to the Commonwealth for purposes of Rule 600. *Id.* Appellant maintains that had counsel engaged in such an investigation, his Rule 600 motion would have been granted. *Id.* at 76.

Here, although Appellant has summarily alleged ineffectiveness, he did not argue that counsel lacked a reasonable basis for his inaction, *i.e.*, not moving for a continuance and investigating the purported discrepancy. *See Becker*, 192 A.3d at 112. Further, Appellant has not argued that but for counsel's inaction, there was a reasonable probability that the outcome of the Rule 600 hearing would have been different. *See Natividad*, 2019 WL 286564 at *11. Nothing within the documents Appellant presented to the PCRA court forecloses that Haase was extradited from outside of Las Vegas, Nevada, to Pennsylvania, when she was subsequently released—before her purported arrest for public drunkenness in Lancaster County.

But even accepting the discrepancy as true, Appellant has not explained why the fact of Haase having been apprehended in Pennsylvania would have

resulted in the trial court granting the Rule 600 motion. *See id.* Regardless of whether Haase was in Pennsylvania or Nevada, Haase was unavailable and could not be located despite the Commonwealth's efforts. *See* N.T. Trial, 5/28/08, at 48-49 (describing efforts by police to locate and apprehend Haase). As a result, the Commonwealth withdrew the charges that required Haase's testimony in October 2007. It was not until after Haase was apprehended in January 2008, and the police interviewed her, that the Commonwealth refiled charges against Appellant in April 2008. *See McGuigan*, 1921 EDA 2018, at 4.

### 4. and 5. Sufficiency of Evidence and Weight of Drugs

Having resolved Appellant's three arguments in support of his third issue, we turn to Appellant's fourth and fifth issues. Appellant argues the evidence was insufficient for all of his convictions. By way of background, the joint stipulation of testimonial evidence presented at Appellant's trial recounted numerous transactions in which Appellant either (1) sold a specified weight of "cocaine and methamphetamine" to a confidential informant; (2) negotiated with a confidential informant for the purchase of drugs, with a co-defendant acting as an intermediary; or (3) gave drugs to co-defendants with instructions to sell the drugs to others. *See, e.g.*, Stip. of Testimonial Evid. For Purpose of Combined Non-Jury Trials, 5/28/8, at 1-6.

On appeal, Appellant argues that the stipulated facts did not "name, identify or describe the testimony of any" person who could identify the

substances at issue as cocaine and methamphetamine. Appellant's Brief at 79-82. Appellant asserts that the stipulation did not describe the controlled substances he was accused of delivering. *Id.* at 80. Appellant similarly argues that there was no testimony at trial establishing the weight of the drugs at issue. *Id.* at 84. Appellant argues that counsel was ineffective by failing to challenge the sufficiency of evidence. *Id.* at 83. Appellant raises a related argument that the "testimonial evidence at trial" was insufficient to establish the weight of the drugs to trigger the mandatory minimum sentences under 18 Pa.C.S. § 7508. *Id.* at 84.

In pertinent part, Pennsylvania criminalizes "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." 35 P.S. § 780-113(a)(30). Simply, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa. Super. 2003) (citations omitted).

Here, the stipulation made it unnecessary for the Commonwealth to "name, identify or describe the testimony of any" person who could identify the drugs as cocaine and methamphetamine. Appellant stipulated to facts establishing that he repeatedly sold or arranged for the sale of "cocaine and methamphetamine." *See, e.g.*, Stip. of Testimonial Evid. For Purpose of Combined Non-Jury Trials, 5/28/8, at 1-6. Because Appellant did not establish his sufficiency challenge had arguable merit, his ineffective assistance of

counsel claim fails. *See Becker*, 192 A.3d at 112; *Kirkland*, 831 A.2d at 611.

To the extent Appellant argues his sentence was illegal based on his stipulation to the weight of the drugs, we begin by noting that Appellant's judgment of sentence became final in 2011, well before *Alleyne v. United States*, 570 U.S. 99 (2013), was decided.[15] "*Alleyne* held that any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury, rather than a judge, and found beyond a reasonable doubt." *Commonwealth v. Washington*, 142 A.3d 810, 812 (Pa. 2016). The *Washington* Court held that *Alleyne* "does not apply retroactively to cases pending on collateral review . . . ." *Id.* at 820. We acknowledge that in *Commonwealth v. DiMatteo*, 177 A.3d 182, 191 (Pa. 2018), the Pennsylvania Supreme Court recognized that Section 7508 is unconstitutional. The *DiMatteo* Court invalidated an illegal Section 7508 sentence when "relief [was] sought in a timely PCRA petition and the judgment of sentence was not final when *Alleyne* was announced." *DiMatteo*, 177 A.3d at 191. Here, Appellant's sentence, unlike the defendant's sentence in *DiMatteo*, became final well before *Alleyne* was announced, and therefore

---

[15] We note that Appellant does not cite any caselaw in support of his Section 7508 argument. *See* Pa.R.A.P. 2119.

Appellant has no meritorious claim under ***Washington***. ***See Washington***, 142 A.3d at 812; ***cf. DiMatteo***, 177 A.3d at 191.

### 6. and 7. Ineffective Assistance of Counsel Regarding Stipulated Trial

For his sixth issue, Appellant argues that the trial court violated the terms of his stipulation by decreasing the Commonwealth's burden of proof. Appellant's Brief at 86. Appellant's seventh issue is that trial counsel was ineffective by failing to litigate the sixth issue and by advising him to accept the stipulation. ***Id.*** at 95-96.

By way of background, before the parties entered their stipulation of facts, the court gave a colloquy of Appellant regarding his waiver of his right to a jury trial. In pertinent part, the following exchange occurred after the court defined possession with intent to deliver:

> THE COURT: . . . there was let's see, one, two, possibly three possessions with intent to deliver, and they appear to involve cocaine, do you agree that you were either in possession of, or do you agree that the Commonwealth's evidence against you would be that you were in possession of that cocaine with the intent to deliver?
>
> [Appellant]: No, your Honor.
>
> THE COURT: So what you're saying is that the Commonwealth has to put on the record at some later time what their evidence specifically is?
>
> [Appellant]: Yes, your Honor. My position is this, your Honor, and I'm not using semantics. There are some things that are justified in here and there are things that, when I say clearly, meaning in my own mind because I know what I have and have not done, . . . and I was looking for an opportunity to put the facts in front of you and have you make a decision.

N.T. Trial, 5/27/08, at 33. The court then continued to colloquy Appellant extensively and found Appellant knowingly, intelligently, and voluntarily waived his right to a jury trial. *See id.* at 16-38.[16]

Later in the hearing, the court again questioned Appellant about the consequences of agreeing to a stipulated facts trial:

> THE COURT: But you understand, [Appellant], at least the way things stand right now, if everything goes along the lines of the way in which at least the Commonwealth believes that they are going to go, the facts that they are going to put before me to which you will stipulate, will probably be sufficient enough for the court to make a finding of guilt on those cases?
>
> [Appellant]: Well, I don't want to agree to that, but I will agree that I understand that if you find that that's the case, that, in fact, you will impose the sentence.

*Id.* at 61.[17]

The next day, the trial court extensively discussed the nature of the stipulated fact trial with Appellant as follows:

> THE COURT: . . . the advantage to [Appellant] by going through this process rather than a guilty plea is to preserve the right to appeal [the court's] ruling on the Rule 600 issue. Is that correct?
>
> [Appellant's counsel]: That is correct, your Honor.
>
> THE COURT: And do you understand that to be correct, [Appellant]?

---

[16] We note that the court and parties referenced a written waiver-of-jury form, which Appellant signed, N.T., 5/27/08, at 38-39, but the form was not transmitted as part of the record.

[17] As noted above, the parties had negotiated a twenty to forty year sentence of imprisonment should the court find Appellant guilty.

[Appellant]: Yeah, I'm keeping my appellate rights.

THE COURT: And the reason I want to make that clear is this. As I have read through the proposed stipulation of facts, on each of the eight cases, it would appear to me that by stipulating to those facts, it's tantamount to a guilty plea. In other words, those facts seem to, without any doubt, make out a case beyond a reasonable doubt. Now, I used doubt twice, but that's what it appears to me, at least on the face of it, unless there's something more that were to come out. So for practical purposes, I think everybody realizes that once we get the stipulated facts into the record, then there's virtually an assured verdict of guilty that's going to come out of the stipulated fact trial, and the only benefit then remaining to [Appellant] by proceeding this way is to preserve any possible victory he may have, but under Rule 600, not under anything else. Is that accurate?

[Appellant's counsel]: The accuracy would be that there's a difference between, of course, a verdict like the court said and plea. We understand that this will be the court's verdict, and, therefore, his direct appellate rights would attach as opposed to three narrow areas of appeal for a guilty plea. That's our understanding.

N.T. Trial, 5/28/08, at 13-14 (some initial capitalization omitted).

The trial court then inquired as to whether Appellant was voluntarily relinquishing his right to confront witnesses. *Id.* at 16.

The court: You agreed to waive your right to confront the witnesses, [Appellant]?

[Appellant]: I do.

THE COURT: And you've discussed this with your attorney?

[Appellant]: Yes, your Honor.

The court: And this is voluntary on your part?

[Appellant]: It is. I do want to say that my understanding of the plea, I'm not pleading guilty—

THE COURT: I didn't suggest that you were. You're not pleading guilty. What you're doing is going through a stipulated fact trial.

[Appellant]: Okay. I'm holding out hope that you will find me not guilty on all counts, just for the record.

* * *

THE COURT: . . . But what I'm telling you, and I want you to have clear in your mind, as I have read through these stipulated facts, I don't see anything in the facts that you have stipulated to that could result in a not guilty verdict?

[Appellant]: That's bad news for me, but let me say this. It was my understanding, and it seems to me that it's the proper understanding, that we were stipulating to agree to the prosecutions content that those witnesses at trial would state what is in the record in front of you?

THE COURT: Correct.

[Appellant]: I have no issue with agreeing with that because I heard them say it already in court. So I agree with the prosecution that that, in fact, is what they would say. I'm hoping that your Honor would look into it a little deeper, maybe see some things there, but that's completely in your control. So I'm not here to argue anything. I just want you to know that that's my understanding, that it's your decision as to whether it's guilty or innocent and that I'm stipulating to the fact that these people would have stated that. I'm not agreeing with what these people have stated, but I'm agreeing to the fact that if called they would, in fact, state what is on that paper, all right.

*Id.* at 17-18.

On appeal, Appellant essentially argues that although he stipulated to the facts, he nonetheless disputes the stipulated facts and is innocent. Appellant's Brief at 91. In support, Appellant has extensively quoted from

- 29 -

various proceedings, some of which we have quoted above.[18] He similarly argues that his stipulation was illegal because it decreased the Commonwealth's burden of proof. *Id.* at 95. Trial counsel, Appellant asserts, was ineffective by deceiving him about the import of a stipulated facts trial. *Id.* at 96. He concludes that but for counsel's ineffective advice, he would have chosen a jury trial. *Id.*

The following principles govern our review: "[i]t is axiomatic that parties may bind themselves by stipulations so long as they do not affect the jurisdiction of the court, and provided that the stipulations are not in contravention of peremptory statutory requirements." *Commonwealth v. Mathis*, 463 A.2d 1167, 1171 (Pa. Super. 1983) (citation omitted). "A colloquy ensuring a knowing and voluntary decision is required any time a defendant stipulates to evidence that virtually assures his conviction because such a stipulation is functionally the same as a guilty plea." *Commonwealth v. Eichinger*, 108 A.3d 821, 832 (Pa. 2014) (citation omitted); *Commonwealth v. Davis*, 322 A.2d 103, 105 (Pa. 1973) (noting that defendant, although not pleading guilty, stipulated to testimony making guilty verdict foregone conclusion at bench trial).

_____

[18] Although we do not reproduce the extensive quotes in his appellate brief, Appellant has combined selected quotes from each hearing together, arguably in a misleading fashion. Appellant also omitted language from his quotes.

In the context of an ineffectiveness claim regarding a guilty plea:

[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338-39 (Pa. Super. 2012) (citation and quotation marks omitted). It follows that the voluntariness of the decision to stipulate to certain facts depends on the competence of counsel's advice. *Cf. id.*

After careful review of the relevant proceedings, including the entirety of the lengthy colloquy regarding Appellant's stipulation of facts—we excerpted portions of it above—we perceive no error. The trial court questioned Appellant quite extensively about the effect of a trial based on stipulated facts. *See, e.g.*, N.T. Trial, 5/27/08, at 61; N.T. Trial, 5/28/08, at 13-14, 16-18. Appellant understood the impact of stipulating to facts but hoped that the court would find him not guilty. *See* N.T. Trial, 5/28/08, at 17-18. He also understood that the purpose of the stipulation was to preserve his direct appeal rights on the Rule 600 issue. *See id.* at 13-14. Further, the stipulation addressed facts only and not any legal burden of proof; therefore, it could not alter the Commonwealth's burden. *See* Stip. of Testimonial Evid. For Purpose of Combined Non-Jury Trials, 5/28/8, at 1-6. Because Appellant's

underlying issue lacks merit, we cannot find Appellant's counsel was ineffective. *Cf. Wah*, 42 A.3d at 338-39.

### 8. Conflict-Free Counsel

Last, Appellant contends the law firm of Duffy, Green, and Redmond was representing him and his cooperating co-defendants, as well as a Commonwealth witness. Appellant's Brief at 98. He maintains the Commonwealth and trial court did not advise him about this conflict and therefore violated his Sixth Amendment right to conflict-free counsel. *Id.* Appellant did not otherwise identify or discuss any purported conflict.

It is well-settled, "[t]o establish that an actual conflict of interest burdens counsel, an appellant must show that counsel actively represented conflicting interests, and the actual conflict adversely affected counsel's performance." *Commonwealth v. Padilla*, 80 A.3d 1238, 1248 (Pa. 2013) (citation, internal brackets, and quotations marks omitted).

Initially, the record reveals that the firm of Duffy, Green, and Redmond represented Appellant until November 21, 2007, when it was granted permission to withdraw. Appellant's bald assertion of a conflict, without an argument of how it affected his then-counsel's performance, is insufficient. *See id.* We note that Appellant had previously litigated this issue, as he raised it on direct appeal, and that Court affirmed, noting that Appellant failed to articulate any prejudice. *McGuigan*, 1921 EDA 2018, at 12. Further, on December 12, 2007, Justin McShane, Esq., entered his appearance for

- 32 -

Appellant and represented him throughout trial, which occurred on May 28, 2008, five months later. McShane, as trial counsel, therefore, never had an actual conflict. *See id.* Having found no error, we affirm the order below. *See Becker*, 192 A.3d at 112.

Order affirmed.

Judge Ott joins the memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/19