**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 26 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered February 14, 2018 at |
| | : | No. 158 WDA 2017, affirming the |
| v. | : | Order of the Court of Common Pleas |
| | : | of Somerset County entered |
| | : | December 22, 2016, at No. CP-56- |
| JEFFREY ALAN OLSON, | : | CR-0000544-2015. |
| | : | |
| Appellant | : | ARGUED:  April 10, 2019 |


**OPINION**


**JUSTICE WECHT**                  **DECIDED:  OCTOBER 31, 2019**

We granted allowance of appeal to consider whether the holding of *Birchfield v. North Dakota*, __ U.S. __, 136 S.Ct. 2160 (2016), constitutes a new rule of law that applies retroactively on post-conviction collateral review.  The Superior Court concluded that *Birchfield* set forth a "procedural" rule for purposes of the *Teague*[1] analysis, and, thus, does not apply retroactively.  We affirm.

## I.     Background

Jeffrey Alan Olson entered an open guilty plea to one count of driving under the influence of alcohol—general impairment ("DUI") on September 18, 2015.  This was Olson's third DUI offense, and, at the time, he was subject to a sentence enhancement

---

[1]     *See Teague v. Lane*, 489 U.S. 288 (1989) (plurality).  This Court applies the *Teague* framework to questions of retroactivity on collateral review.  *See, e.g.*, *Commonwealth v. Washington*, 142 A.3d 810 (Pa. 2016).

due to his refusal to submit to blood alcohol concentration ("BAC") testing. On December 21, 2015, the trial court sentenced Olson to a term of eighteen months' to five years' imprisonment, applying the then-applicable mandatory minimum sentencing provision.[2] Olson did not file a direct appeal, and his judgment of sentence became final on January 20, 2016.

On June 23, 2016, the Supreme Court of the United States decided *Birchfield*. As discussed further below, the *Birchfield* Court held, *inter alia*, that a state may not "impose criminal penalties on the refusal to submit" to a warrantless blood test. *Id.* at 2185.

On August 17, 2016, Olson filed a timely, *pro se* petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, challenging, *inter alia*, the legality of his sentence in light of *Birchfield*. The PCRA court appointed counsel for Olson, and held a hearing on October 24, 2016. Olson filed a counseled, amended PCRA petition on November 8, 2016. After the PCRA court dismissed Olson's petition on December 23, 2016, Olson appealed the PCRA court's order to the Superior Court.

---

[2] Olson pleaded guilty to an offense under 75 Pa.C.S. § 3802(a)(1). At the time of Olson's sentencing, the applicable sentencing statute provided, in relevant part, that:

> An individual who violates section 3802(a)(1) and refused testing of blood or breath . . . shall be sentenced as follows:
>
> *       *       *
>
> (3) For a third or subsequent offense, to:
>
>> (i) undergo imprisonment of not less than one year;
>>
>> (ii) pay a fine of not less than $2,500; and
>>
>> (iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S. § 3804(c)(3) (amended July 20, 2017). This provision since has been amended so as to apply to individuals who "refused testing of breath . . . or testing of blood *pursuant to a valid search warrant*." 75 Pa.C.S. 3804(c) (emphasis added).

The Superior Court affirmed.  *Commonwealth v. Olson*, 179 A.3d 1134 (Pa. Super. 2018).  The court recognized that *Birchfield* rendered unconstitutional the imposition of enhanced criminal penalties due to the refusal to submit to warrantless blood testing, such that "a sentencing court today could not have sentenced [Olson] to the mandatory minimum sentence under Section 3804(c)(3)."  *Id.* at 1138.  However, because Olson's judgment of sentence already was final, the Superior Court reasoned, Olson would be entitled to benefit from *Birchfield*'s application only if the decision were deemed to apply retroactively on collateral review.

Setting forth the governing legal standard, the Superior Court noted that, pursuant to the *Teague* framework, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review."  *Id.* at 1139 (quoting *Commonwealth v. Ross*, 140 A.3d 55, 59 (Pa. Super. 2016)).  New rules apply retroactively in a collateral proceeding, the court observed, only if the rule is "substantive," or constitutes a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Id.* (internal quotation marks omitted). With regard to the distinction between substantive and procedural rules, the Superior Court summarized:  "Substantive rules are those that decriminalize conduct or prohibit punishment against a class of persons.  Rules that regulate only the manner of determining the defendant's culpability are procedural."  *Id.* (quoting *Ross*, 140 A.3d at 59; capitalization modified).

After observing the operation of the applicable sentencing statute, which "effectively increases the punishment when a driver refuses to consent to a blood test," *id.*, the Superior Court applied the *Teague* standard as follows:

> The new *Birchfield* rule, as it applies to Pennsylvania's DUI statutes providing for enhanced penalties, does not alter the range of conduct or the class of persons punished by the law:  DUI remains a crime, and blood tests are permissible with a warrant or consent.  Rather, the new rule precludes

application of this mandatory minimum sentencing provision providing an enhanced penalty for [Olson's] refusal to submit to blood testing. This change in the Pennsylvania sentencing enhancements applicable to DUI convictions is procedural because the new *Birchfield* rule regulates only the manner of determining the degree of defendant's culpability and punishment.

*Id.* Having deemed the *Birchfield* rule "procedural" rather than "substantive," the Superior Court thus determined that "*Birchfield* does not apply retroactively in Pennsylvania to cases pending on collateral review." *Id.* Accordingly, although Olson received a sentence that was facially invalid under *Birchfield*, the Superior Court concluded that Olson could not benefit from *Birchfield*'s application because his judgment of sentence was final when *Birchfield* was decided.

We granted Olson's petition for allowance of appeal in order to address the following questions:

a. Does *Birchfield v. North Dakota*, __ U.S. __, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), apply retroactively where the petitioner challenges the legality of his sentence through a timely petition for post-conviction relief?

b. Does *Birchfield v. North Dakota*, __ U.S. __, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016), render enhanced criminal penalties for blood test refusal under 75 Pa.C.S. §§ 3803-3804 illegal?

*Commonwealth v. Olson*, 190 A.3d 1131 (Pa. 2018) (*per curiam*).

## II.  Analysis

### (A)  Legality of Sentence

After we granted allowance of appeal in this matter, this Court decided *Commonwealth v. Monarch*, 200 A.3d 51 (Pa. 2019), which resolved the second question presented. In *Monarch*, we concluded that, "[u]nder *Birchfield*, it is clear the enhanced mandatory minimum sentences authorized by the statute are unconstitutional when based on a refusal to submit to a warrantless blood test." *Id.* at 57. We held that a challenge to such a sentence implicates the sentence's legality, and thus is nonwaivable

and may be raised by a court *sua sponte*. Accordingly, the question in this appeal relating to the legality of sentence is fully answered by *Monarch*. However, this observation does not resolve the matter of Olson's sentence, inasmuch as "a new rule of law does not automatically render final, pre-existing sentences illegal." *Washington*, 142 A.3d at 814. Rather, a "finding of illegality, concerning such sentences, may be premised on such a rule only to the degree that the new rule applies retrospectively." *Id.* We therefore turn to the central issue raised in this appeal.

### (B)    Retroactivity

The determination of whether a new rule is to be applied retroactively on collateral review presents a question of law, as to which our standard of review is *de novo* and our scope of review is plenary. *Washington*, 142 A.3d at 814. In order to situate the parties' competing approaches to this question, it is helpful to summarize both the rationale of *Birchfield* and the legal standard that this Court applies to questions of retroactivity—the *Teague v. Lane* framework.

### (1)    The *Teague* Framework

When a decision of the Supreme Court of the United States results in a "new rule," that "rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).[3] However, "[u]nder *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced." *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 728 (2016). There are, however, "two categories of rules" that are exempt from *Teague*'s "general retroactivity bar," *id.*,

---

[3]    A "new" ruling is "defined as one that 'breaks new ground or imposes a new obligation on the States or Federal Government,' or, stated otherwise, where 'the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Commonwealth v. Hughes*, 865 A.2d 761, 780 (Pa. 2004) (quoting *Teague*, 489 U.S. at 301).

which a defendant may invoke notwithstanding the finality of his or her judgment of sentence. First, "[n]ew *substantive* rules generally apply retroactively." *Schriro*, 542 U.S. at 351. Second, a much narrower class of "watershed rules of criminal procedure" also apply retroactively. The High Court has described such "watershed" rules as those that "implicat[e] the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 352 (internal quotation marks omitted). Because no party in the instant case contends that *Birchfield* announced a "watershed" rule of criminal procedure, we are here concerned only with the first category, and its attendant determination of whether the *Birchfield* rule is "substantive." *See Commonwealth v. Spotz*, 896 A.2d 1191, 1243 (Pa. 2006) ("For purposes of retroactivity analysis, we distinguish between new rulings involving substantive criminal law, which are applied retroactively on collateral review, and new procedural rulings of constitutional dimension, which are generally subject only to prospective application.").

Substantive rules include those "forbidding criminal punishment of certain primary conduct" or "prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Montgomery*, 136 S.Ct. at 728. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353. Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 136 S.Ct. at 729. Procedural rules, by contrast, "are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.'" *Id.* at 730 (quoting *Schriro*, 542 U.S. at 353) (emphasis omitted). "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted

with use of the invalidated procedure might have been acquitted otherwise." *Schriro*, 542 U.S. at 352.

With these classifications in mind, we survey the Court's reasoning in *Birchfield* and the contours of the rule articulated therein.

### (2) *Birchfield*

*Birchfield* concerned the legality of a particular consequence—criminal punishment—widely imposed by state "implied consent" laws. By way of background, because DUI laws generally prohibit the operation of a motor vehicle with a BAC over a specified level, and because the acquisition of BAC evidence necessitates testing procedures with which a motorist's cooperation is either required or highly preferred, states all have adopted "implied consent" laws in order to "find a way of securing such cooperation." *Birchfield*, 136 S.Ct. at 2168. "These laws impose penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws." *Id.* at 2166. One common consequence of BAC test refusal was the imposition of criminal penalties. It was this consequence that was the focus of the *Birchfield* Court's analysis. *See id.* at 2172 ("We granted certiorari . . . in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream.").

The most common BAC tests—breath tests and blood tests—both indisputably constitute searches under the Fourth Amendment. *See Birchfield*, 136 S.Ct. at 2173 (citing *Skinner v. Ry. Labor Execs.' Ass'n.*, 489 U.S. 602, 616-17 (1989); *Schmerber v. California*, 384 U.S. 757, 767-68 (1966)). Thus, although one of the petitioners in *Birchfield* refused a blood test, one refused a breath test, and one submitted to a blood

test following a police officer's provision of "implied consent" warnings, the Court's overarching approach to all three cases was the same:

> Despite these differences, success for all three petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate. If, on the other hand, such warrantless searches comport with the Fourth Amendment, it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant.

*Id.* at 2172. The Court, thus, analyzed the question before it "by considering whether the searches demanded in these cases were consistent with the Fourth Amendment." *Id.* at 2173.

The *Birchfield* Court ultimately drew a constitutionally significant line between breath testing and blood testing. The Court held that, because "breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, . . . a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Id.* at 2185. Because a warrantless breath test thus is categorically valid under the search-incident-to-arrest exception to the warrant requirement, the Court held, a motorist has "no right to refuse it," and criminal penalties may be imposed upon the failure to submit to it. *Id.* at 2186. By contrast, the Court held that "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Id.* at 2184. The Court observed that the government had "offered no satisfactory justification for demanding the more intrusive alternative without a warrant." *Id.* Thus, the *Birchfield* Court found no categorical exception to the warrant requirement for blood

tests.[4]  Absent a valid basis upon which to demand an intrusive blood test without a search warrant, the Court held that a state cannot "impose criminal penalties on the refusal to submit to such a test."  *Id.* at 2185.

Accordingly, although *Birchfield* has significant implications for the legality of criminal sentencing, *see Monarch*, *supra*, such considerations are derivative of the Court's reasoning with regard to the validity of the underlying search.  We now consider the parties' respective positions as to whether the *Birchfield* rule should be deemed "substantive" for purposes of *Teague*'s retroactivity analysis.

### (3)     Arguments

Preliminarily, we note that there is no dispute that *Birchfield* announced a "new" rule of law.  The Commonwealth observes that, before *Birchfield*, warrantless blood tests were viewed as categorically valid under *Schmerber*, *supra*, and *South Dakota v. Neville*, 459 U.S. 553 (1983), and that "*Birchfield* dramatically departed from that precedent and is clearly new."  Brief for Commonwealth at 6 n.2.  Accordingly, and because *Teague*'s exception for "watershed rules of criminal procedure" is not at issue, *see id.* at 7, the parties focus narrowly upon the definition of a "substantive" rule for purposes of *Teague*.

 Olson relies heavily upon *Montgomery*, wherein the Supreme Court of the United States held that the constitutional rule of *Miller v. Alabama*, 567 U.S. 460 (2012), which prohibited mandatory sentences of life imprisonment for juveniles, is substantive and applies retroactively.  Olson emphasizes *Montgomery*'s statement that substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and

---

[4]     Recently, in *Mitchell v. Wisconsin*, __ U.S. __, 139 S.Ct. 2525 (2019) (plurality), the Court held that the exigent circumstances exception to the warrant requirement generally will apply to blood tests conducted upon motorists who are "unconscious and therefore cannot be given a breath test."  *Id.* at 2531.  Although the *Mitchell* Court did not cast its holding as a "categorical" exception to the warrant requirement, it nonetheless stated that the exigency exception will "almost always" apply to unconscious motorists. *Id.*

punishments altogether beyond the State's power to impose." Brief for Olson at 12 (quoting *Montgomery*, 136 S.Ct. at 729). This characterization fits *Birchfield*, Olson contends, because "*Birchfield* set forth a categorical constitutional guarantee against the criminalization of the refusal of blood draws, which put beyond Pennsylvania's power [the imposition of] enhanced criminal laws and punishments." *Id.* at 13. Thus, Olson argues, "any Pennsylvania statute that criminalizes the refusal of a blood test is unconstitutional." *Id.*

Olson further analogizes *Birchfield* to *Miller*—which announced the juvenile sentencing rule later deemed substantive in *Montgomery*—noting that both decisions "resulted in the invalidation of state mandatory sentencing statutes." *Id.* Finally, Olson argues that the *Birchfield* rule cannot be deemed procedural because an "invalid procedural rule can be applied at trial, but result in a legal and just conviction." *Id.* The failure to apply *Birchfield* in a DUI case involving blood test refusal, however, will result in imposition of the enhanced criminal penalties that the *Birchfield* Court forbade, producing an "unjust and illegal result." *Id.* at 14. Thus, Olson contends, *Birchfield* set forth a substantive rule that should be applied retroactively on collateral review, entitling him to relief.

The Commonwealth disagrees with Olson's suggestion that *Birchfield* placed a "categorical" prohibition upon criminal punishment for blood test refusal, inasmuch as the Court "held only that a warrant or exigent circumstances are necessary to justify the demand for the test." Brief for Commonwealth at 9. This is unlike certain other types of "primary" conduct that the Supreme Court has placed beyond the power of the government to punish, the Commonwealth observes, such as consensual homosexual activity, or the burning of an American flag. *Id.* at 10 (citing *Lawrence v. Texas*, 539 U.S. 558 (2003); *Texas v. Johnson*, 491 U.S. 397 (1989)). Unlike these sorts of conduct, blood

test refusal is not altogether beyond the government's power to criminalize. Rather, the Commonwealth argues, *Birchfield* merely placed a condition that must be satisfied before criminal punishment may be imposed: "The state must take steps—obtaining a warrant or proving exigent circumstances—to justify its demand for a blood test, as a Fourth Amendment search, in order to criminally sanction refusal." *Id.* at 11. "But the 'primary, private individual conduct,' both before and after the new decision," *i.e.*, blood test refusal, "remains exactly the same." *Id.*

In this regard, the Commonwealth compares *Birchfield* to *Alleyne v. United States*, 570 U.S. 99 (2013), wherein the High Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" that must be submitted to the jury and proven beyond a reasonable doubt. *See* Brief for Commonwealth at 11. *Alleyne* did not prohibit mandatory minimum sentences as a categorical matter, the Commonwealth explains, but rather set forth a procedural requirement that must be satisfied in order to justify their imposition. The Commonwealth maintains that the "same is true of *Birchfield*." *Id.* The Commonwealth further notes that, in *Washington*, *supra*, this Court concluded that the *Alleyne* rule is not substantive. The Commonwealth encourages us to reach the same conclusion here.

The Commonwealth volunteers three decisions of our sister states that have characterized the *Birchfield* rule as substantive. *See id.* at 15 (citing *Morel v. State*, 912 N.W.2d 299 (N.D. 2018); *Johnson v. State*, 916 N.W.2d 674 (Minn. 2018); *State v. Vargas*, 404 P.3d 416 (N.M. 2017)). The Commonwealth contends that these decisions were erroneous because each viewed the conduct in question as *warrantless* blood test refusal, rather than simply blood test refusal. The Commonwealth argues that this overlay is misguided because the conduct of the motorist—refusing to submit to a blood test—is the same regardless of whether police officers obtain a search warrant for the test.

Further, it is inaccurate to characterize *Birchfield* as categorically barring criminal sanctions for "warrantless refusal," the Commonwealth argues, because there are situations in which a blood test may be valid under the Fourth Amendment even absent a warrant, to wit, where exigent circumstances are present. *Id.* at 15. Accordingly, the Commonwealth encourages us not to follow the holdings of the North Dakota, Minnesota, and New Mexico courts.

Finally, the Commonwealth observes that other categories of substantive rules have no application herein, such as the class of rules that "narrow the scope of a criminal statute by interpreting its terms," or prohibit "a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 16-17 (quoting *Welch v. United States*, __ U.S. __, 136 S.Ct. 1257, 1265 (2016); *Montgomery*, 136 S.Ct. at 732). With regard to statutory interpretation, the Commonwealth notes that *Birchfield* did not hinge upon the interpretation of any particular statute, but rather set forth a constitutional rule of widespread application. Further, unlike *Miller* and *Montgomery*, which were premised upon "group characteristics" of juveniles, *Birchfield* "did not define a class, or discuss the characteristics of any group, much less immunize anyone due to the attributes of their class." *Id.* at 16-17. Accordingly, the Commonwealth maintains that the *Birchfield* rule does not fit within any of the categories that define substantive rules, and, thus, should not be held to apply retroactively to defendants whose judgments of sentence are final.

### (4) Discussion

We agree with the Commonwealth in all material respects. First, as is clear from the manner in which the *Birchfield* Court approached the question before it, the prohibition of criminal penalties for blood test refusal was in no way "categorical." Rather, *Birchfield* held that, as searches within the meaning of the Fourth Amendment, compliance with breath or blood testing may be compelled, and criminal penalties may be imposed for

refusal to comply therewith, provided that the tests are "consistent with the Fourth Amendment." *Birchfield*, 136 S.Ct. at 2173. In other words, the lawfulness of the criminal penalty that attaches to BAC test refusal is solely dependent upon the validity of the test as a Fourth Amendment matter. If the test—indisputably a search—is valid under the Fourth Amendment, "it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant." *Id.* at 2172.

The fact that the *Birchfield* Court identified no categorical exception to the warrant requirement for blood testing, as it did for breath testing, does not mean that criminal penalties for blood test refusal are "altogether beyond the State's power to impose." *Montgomery*, 136 S.Ct. at 729. Most obviously, the acquisition of a search warrant indisputably validates such a test; renders it "consistent with the Fourth Amendment," *Birchfield*, 136 S.Ct. at 2173; vitiates the right of the motorist to refuse it; and thus serves as a valid justification for the imposition of enhanced criminal penalties for the refusal to comply.[5] Further, the *Birchfield* Court repeatedly referred to the potential applicability of the exigent circumstances exception to the warrant requirement, which, if established, also may validate a warrantless blood test. *See, e.g.*, *id.* at 2184 ("Nothing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not."). Because a warrantless blood test that is justified by an exigency also would "comport with the Fourth Amendment," *id.* at 2172, *Birchfield*

---

[5]     In this regard, it is noteworthy that the General Assembly has recognized this by amending the applicable statute so as to provide for enhanced criminal penalties when a motorist is convicted of DUI and "refused testing of breath . . . or testing of blood *pursuant to a valid search warrant*." 75 Pa.C.S. 3804(c) (emphasis added); *see supra* n.2.

does not prohibit the imposition of criminal penalties for the refusal to submit to such a test.

The potential applicability of the exigent circumstances exception is one reason that we respectfully disagree with the Supreme Courts of North Dakota, Minnesota, and New Mexico. As the Commonwealth observes, in *Morel*, *Johnson*, and *Vargas*, the Courts viewed the conduct in question as the refusal to submit to a *warrantless* blood test. *See Morel*, 912 N.W.2d at 305 ("The *Birchfield* decision held unconstitutional the imposition of criminal penalties for refusing to submit to a warrantless blood test . . . effectively altering the range of conduct the law punishes."); *Vargas*, 404 P.3d at 420 ("*Birchfield* bars criminal sanctions previously imposed upon a subject for refusing to submit to warrantless blood tests."); *Johnson*, 916 N.W.2d at 683 ("The *Birchfield* rule has placed a category of conduct outside the State's power to punish. Now, a suspected impaired driver may only be convicted of test refusal if that person refused a breath test or refused a blood or urine test that was supported by a warrant or a valid warrant exception. The *Birchfield* rule therefore is substantive."). However, because the exigent circumstances exception can provide a means to validate a warrantless blood test, and because it is the validity of the search under the Fourth Amendment that is significant to the *Birchfield* rule, it is clear that the prohibition of criminal punishment for *warrantless* blood test refusal is not categorical.

Chief Justice Saylor dissents as to this point, astutely observing that a motorist faced with a demand for a warrantless blood test generally will be unable to discern whether such a warrantless search is justified by exigent circumstances, inasmuch as that determination often will depend upon an array of factors known only to law enforcement. *See* Dissenting Opinion at 2. We agree with the Chief Justice that this scenario presents a number of difficulties that, as a practical matter, may render exigent

circumstances an inadequate substitute for a search warrant as it concerns a motorist's ability to ascertain whether a demand for a blood test is valid, and consequently whether enhanced criminal penalties lawfully may attach to a refusal. The Chief Justice also correctly observes that an inquiry into the existence of exigent circumstances is not encompassed within the relevant statutory provision, as amended. *Id.* (citing 75 Pa.C.S. § 3804(c)); *see supra* nn. 2 & 5.

Nonetheless, the determination of whether a constitutional rule is substantive for purposes of *Teague* does not depend upon case-specific outcomes, nor does it turn upon the attributes of any particular statutory scheme. Our task is to ascertain the character of the rule as a constitutional matter. Despite the Chief Justice's apt criticism of the viability of reliance upon the exigent circumstances exception in this arena, the fact remains that the *Birchfield* Court's articulation of its rule revolved around the validity of the search under the Fourth Amendment, and such validity may be established by a demonstration of exigent circumstances.[6] Thus, notwithstanding the difficulties that may arise in practice, and notwithstanding whether the applicable statute allows for such an inquiry in Pennsylvania courts, *Birchfield* suggests that, as a purely constitutional matter, the

---

[6] Indeed, in applying its holding to the cases before it, the *Birchfield* Court reasoned:

> Petitioner Birchfield was criminally prosecuted for refusing a warrantless blood draw, and therefore the search he refused cannot be justified as a search incident to his arrest or on the basis of implied consent. There is no indication in the record or briefing that a breath test would have failed to satisfy the State's interests in acquiring evidence to enforce its drunk-driving laws against Birchfield. *And North Dakota has not presented any case-specific information to suggest that the exigent circumstances exception would have justified a warrantless search.* Unable to see any other basis on which to justify a warrantless test of Birchfield's blood, we conclude that Birchfield was threatened with an unlawful search and that the judgment affirming his conviction must be reversed.

*Birchfield*, 136 S.Ct. at 2186 (emphasis added; citation omitted).

presence or absence of exigent circumstances remains relevant to the analysis. This observation, in turn, reveals the absence of a *categorical* prohibition of criminal penalties for refusal to submit to warrantless blood testing.

In any event, the potential applicability of the exigent circumstances exception is not alone dispositive of the character of the *Birchfield* rule. More fundamentally, we agree with the Commonwealth that *Birchfield* did not alter "the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353. Without regard to the presence or absence of a search warrant, the "conduct" of the motorist remains the same: refusing to submit to a blood test. As the Commonwealth emphasizes, *Birchfield* did not designate the act of refusing a blood test as constitutionally protected conduct under all circumstances, and thus categorically outside the reach of the criminal law. To the contrary, *Birchfield* placed a procedural obligation upon the *police* that, when satisfied, *authorizes* the demand for a blood test and thus permits criminal penalties for refusal. Stated otherwise, the permissibility of compelling compliance with a blood test, and the concomitant availability of criminal penalties for refusal, do not depend upon the actions of the motorist. Rather, the dispositive consideration is whether the actions of the police officers comport with the Fourth Amendment. Accordingly, we reject our sister states' overlay of the absence of a warrant upon the characterization of the conduct of the *motorist* that is subject to punishment.

We also find merit in the Commonwealth's analogy to *Alleyne*, at least in broad strokes. As the Commonwealth emphasizes, *Alleyne* did not prohibit mandatory minimum sentences as a categorical matter. Instead, *Alleyne* set forth a procedural requirement that must be satisfied before such a sentence may be imposed: "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 570 U.S. at 103. *Birchfield*, likewise, set forth a procedural requirement that must be satisfied

before the refusal to submit to a blood test may be criminally punished: compliance with the warrant requirement. Neither decision places a category of punishment "altogether beyond the State's power to impose." *Montgomery*, 136 S.Ct. at 729. Rather, both decisions set forth conditions necessary to the imposition of such punishment. As noted, this Court already has concluded that the *Alleyne* rule is not substantive for purposes of *Teague*. *See Washington*, *supra*.

Olson's reliance upon *Montgomery* is misplaced. *Montgomery*'s characterization of the *Miller* rule as substantive was premised upon class-based considerations relating to juvenile offenders. *See Montgomery*, 136 S.Ct. at 734 ("Because *Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption,' it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law.") (internal citations omitted). Unlike *Miller* and *Montgomery*, *Birchfield* did not hinge upon the attributes of any particular class of defendants. Further, because *Birchfield*'s holding was not premised upon the interpretation of any particular statute, the category of substantive rules that "narrow the scope of a criminal statute by interpreting its terms," *Schriro*, 542 U.S. at 351, is plainly inapplicable.

We recognize that the *Birchfield* rule does not fit neatly into the typical definition of a "procedural" rule as one that is "designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.'" *Montgomery*, 136 S.Ct. at 730 (quoting *Schriro*, 542 U.S. at 353) (emphasis omitted). However, *Teague* sets forth a "general retroactivity bar" for purposes of collateral review, *id.* at 728, and substantive rules are an exception to that general rule. Accordingly, if a

new rule does not meet the definition of "substantive" within the meaning of *Teague*, that conclusion is dispositive.

Because *Birchfield* did not set forth a "categorical constitutional guarantee" that places criminal punishment for blood test refusal "altogether beyond the State's power to impose," *id.* at 729, but, rather, established a procedural requirement that, once satisfied, authorizes that punishment, the *Birchfield* rule is not substantive. Accordingly, *Birchfield* does not apply retroactively on post-conviction collateral review.

The order of the Superior Court is affirmed.

Justices Baer, Todd and Dougherty join the opinion.

Justice Mundy files a concurring opinion.

Chief Justice Saylor and Justice Donohue file dissenting opinions.